MABEL E. RUSSELL, as Sole Administratrix, etc., of GEORGE
A. RUSSELL, Deceased, Appellant, *v.* ERIE RAILROAD COM-
PANY, Respondent.

Third Department, March 7, 1917.

Master and servant — negligence — death caused by hoisting machine
— action under Federal Employers' Liability Act — proof raising
question for jury — when plaintiff not bound by testimony of witness
called by him.

Action under the Federal Employers' Liability Act to recover for the
death of the plaintiff's intestate who, while engaged in operating a coal
hoist, was killed by being wound between the drum of the hoist and the
cable. It appeared that an employee who was assisting the decedent,
when called as a witness for the plaintiff, testified that he did not open
the throttle which set the machinery in motion and that this act was
done by the decedent himself. It appeared, however, that the throttle
was automatic in that it would not stay open unless held open, and that
the decedent at the time of the accident was not near the throttle. On
all the evidence, *held*, that there was a question for the jury and that
a nonsuit was error.

As the decedent, being engaged in interstate commerce, was under the
protection of the Federal Employers' Liability Act the fellow-servant
rule has no application.

Although the decedent's fellow-workman, who was employed by the
defendant, was called as a witness by the plaintiff, the latter was not
bound by his testimony, if *other evidence showed that the witness* was
wrong.

APPEAL by the plaintiff, Mabel E. Russell, as administra-
trix, from a judgment of the Supreme Court in favor of the
defendant, entered in the office of the clerk of the county of
Chemung on the 14th day of May, 1914, upon a dismissal of
the complaint by direction of the court at the close of plaintiff's
case.

*Mortimer L. Sullivan* and *Wallace W. Seeley,* for the
appellant.

*Stanchfield, Lovell, Falck & Sayles* [*Halsey Sayles* of
counsel], for the respondent.

KELLOGG, P. J.:

The action is under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143) to recover for the death of the plaintiff's intestate caused by the alleged negligence of the defendant and its servants. At the time of his death the intestate was operating a McMiler coal hoist, and was killed by being wound between the drum of the hoist and the cable. The intestate was familiar with operating this hoist, but the company furnished Canfield as an assistant who had but little practical experience in such work, and the intestate was told to instruct him. Canfield and the deceased were alone in the cabin which inclosed the boiler, drums, levers and machinery. In operating the hoist the cable sometimes piled up or twisted upon the drum, and it was necessary to stop the machine and straighten it out. Canfield says that Russell said they would have to straighten out the cable on the drum. He stopped the machine, climbed over in by the window and fixed the cable up. He tried to pull the cable up, and told Canfield to put his foot against the drum and push it and that would give a slack so that they could straighten the cable out; Russell came over where he was and they both got hold of the cable; Russell walked over the gears; the machine was not running; they straightened the cable on the drum. He continues: "Russell then walks right around back to the throttle of the machine and starts the machine going, then he leaves the throttle and steps over by the window and picks the cable up. * * * The cable was lying down under the window sill right across from the drum, back there over the gears under the window sill." Canfield turned around and saw Russell going down over the drum, caught between the drum and the cable.

Canfield's account of the accident is not very satisfactory, and he does not make it plain how the accident occurred. The important point seems to be that Russell set the machine going, left the throttle, turned around and went over by the window, and the next seen of him he was caught between the drum and the cable. There is no substantial evidence which would justify the finding that the drum and cable could be guarded. But there is evidence which leaves it uncertain whether the

accident occurred in the way indicated by Canfield or whether Canfield negligently pulled the throttle and set the machine going when the decedent was in a place of danger.

It is conceded by the briefs that the decedent was an employee of the defendant engaged in interstate commerce. He was, therefore, under the protection of the Federal Employers' Liability Law which abolishes the fellow-servant rule. (*Second Employers' Liability Cases,* 223 U. S. 1; *Central Vermont Ry.* v. *White,* 238 id. 507.) There was evidence tending to show that the throttle acted automatically, and if it was released the machine would stop. At the place where the decedent was caught he could not have had hold of the throttle, which leaves an inference with more or less force that in some way and for some reason Canfield must have pulled the throttle at a time when the decedent was in a place of danger.

Apparently by a change in the packing gland on the throttle stem it would prevent the throttle from acting automatically. The witness Coleman, who was first at the throttle after the injury, testified upon direct examination that when released the throttle closed itself; later, upon cross-examination, he testified that he had to move the throttle in order to close it. It was a fair question for the jury to determine which one of these versions was right. He was an employee of the company. Canfield swears that he did not pull the throttle, but if the machine would only run while the throttle was being held open, that fact apparently contradicts him. He was called as a witness for the plaintiff and was an employee of the defendant; he may have made a mistake. His evidence is not binding upon the plaintiff if other evidence shows that he was wrong.

We conclude that there was a question for the jury. If Canfield negligently started the engine and thus caused the death, the defendant is liable. The judgment should, therefore, be reversed and a new trial granted, with costs to the appellant to abide the event.

All concurred.

Judgment reversed and new trial granted, with costs to appellant to abide event.