MARGARET H. FORD, as Administratrix, etc., Plaintiff,
    *v.* WILLIAM G. McADOO, Director General of
Railroads of the United States, Defendant.

(Supreme Court, Chemung Special Term, November, 1919.)

Negligence — action for damages for personal injuries — trial —
    carriers — evidence — interstate commerce — when motion for
    a new trial denied — verdict — Boiler Inspection Act.

In an action to recover damages for the killing of plaintiff's
intestate, a head brakeman on defendant's railroad, while at
work on a locomotive which had been duly inspected by the
inspectors of the interstate commerce commission, it appeared
that at the time of the accident there was on the left side of
the tank about two feet from the grab handle used in con-
nection with the steps between the tender and the locomotive
a certain hook, the construction and maintenance of which
plaintiff claimed was in itself dangerous in that it was liable
to come in contact with the clothing of defendant's employees,
including the deceased, in passing up and down said steps
while in the discharge of their duty, thereby rendering them
liable to accidents and injury by reason of the close proximity
of the hook. Plaintiff also claimed that the hook was the
proximate cause of the death of her intestate in that in some
manner his clothing came in contract with the hook by means
whereof he was thrown under the wheels of the cars and his
death resulted. One of the defendant's expert witnesses ad-
mitted that the hook could be guarded when not in use but
that no thought or attention had been given to it. *Held,*
that whether there had been a violation of the Boiler Inspec-
tion Act and the amendments thereto which require common
carriers engaged in interstate commerce to equip their loco-
motives with safe and suitable boilers and appurtenances
thereto was a question for the jury.

*Held,* also, that whether the hook was the proximate cause
of the death of plaintiff's intestate was a question for the jury
though how or in what manner he met his death was more or
less a matter of inference.

The jury was instructed that they could not guess or surmise or speculate that the accident might or might not have happened in a certain way, but that a finding in that respect must be based upon a fair preponderance of evidence, and the charge of the court with respect to the degree of care the defendant was required to exercise in furnishing the decedent with a safe and suitable locomotive and not causing it to be properly inspected for defects, if any, was more favorable to the defendant than it had a right to expect. *Held,* that its motion for a new trial after a verdict in favor of plaintiff will be denied.

MOTION for a new trial.

Mortimer L. Sullivan, for plaintiff.

Stanchfield, Lovell, Falck & Sayles, for defendant.

KELLOGG (A. L.), J.　This is a motion for a new trial, resultant from the verdict of a jury in favor of the plaintiff in the sum of $12,500.

The action was brought by the plaintiff, Margaret H. Ford, as administratrix of the estate of her husband, Truman C. Ford, against the defendant Delaware, Lackawanna and Western Railroad Company to recover damages alleged to have been sustained by the widow and next-of-kin by reason of his death, on or about the 29th day of April, 1918, while he was in defendant's employ as head brakeman on its railroad. Before the trial of the action William G. McAdoo, the railroad administrator of the United States, was substituted as party defendant.

It was contended by the plaintiff that her husband's death was caused solely by the negligence of the defendant in failing to comply with the provisions of the Federal Boiler Inspection Act, and the acts amendatory thereof, passed by the congress of the United

States, and known as "An act to promote the safety of employees and travelers upon railroads," by compelling common carriers engaged in interstate commerce to equip their locomotives with safe and suitable boilers and appurtenances thereto, including the tender and all parts and appurtenances thereof.

It appears that upon the style of locomotive upon which the decedent was working at the time of the accident which resulted in his death, a certain hook was located on the left side of the tank about twenty-three and one-half inches from the grab handle used in connection with the steps leading up and down between the tender and locomotive, about seven inches from the bottom of the tank, of the height of about one and one-eighth inches, and extending from the tank about an inch and a quarter, which was used for the purpose of drawing water from the tank into a pail to be hung on this hook for various purposes, to wit, for hot journals, for employees to wash in, and at times to drink. It was the claim of the plaintiff that the construction and maintenance of said hook was in itself dangerous, in that it was liable to come in contact with the clothing of the employees of the defendant, including the decedent, in passing up and down the steps between the locomotive and tender, while in the discharge of their duties, and thereby rendered them liable to accidents and injury by reason of the close proximity thereof, and that the hook in question was the proximate cause of the death of Truman H. Ford, in that in some manner his clothing came in contact with the same, by means whereof he was thrown under the wheels of the cars of his train, and his death resulted therefrom.

It was the contention of the defendant, on the contrary, that it was not negligent in any of the respects

mentioned, and that in any event there was nothing whatsoever with respect to the construction of the locomotive which was the proximate cause of the death of plaintiff's intestate; that it was of approved make and design, and had been duly and properly inspected by its own, as well as by the inspectors of the interstate commerce commission of the United States; and that no question of fact was presented at any time for the consideration of the jury.

The law and facts as they are applicable to the case, as well as to the contentions of the plaintiff and defendant in relation thereto, were presented with some care by the court in its charge to the jury. The only questions for consideration here are:

(1) Was the maintenance and use by the defendant of the locomotive in question, at the time of the accident, in view of its construction with the hook on the outside of the tender, as described, a violation of the Boiler Inspection Acts of the United States, and if so, was a question of fact, with respect thereto, presented for the consideration of the jury? Or, was the construction of the locomotive in its entirety, under the evidence, a question of law solely for the court?

(2) If it may be assumed that a question of fact was presented for the jury under the first proposition, was there a further question of fact for them to consider as to whether or not the hook was the proximate cause of death of plaintiff's intestate?

The Federal Boiler Inspection Act, and the acts amendatory thereof passed by the congress of the United States and known as "An act to promote the safety of its travelers on railroads," by compelling common carriers engaged in interstate commerce to equip their lomocotives with safe and suitable boilers and appurtenances thereto, in section 1, provides as

follows: " The provisions of this Act shall apply to any common carrier or carriers, their officers, agents, and employees, engaged in the transportation of passengers or property by railroad in the District of Columbia, or in any Territory of the United States, or from one State or Territory of the United States, or the District of Columbia, to any other State or Territory of the United States or the District of Columbia, or from any place in the United States through a foreign country to any other place in the United States. The term ' railroad ' as used in this Act shall include all the roads in use by any common carrier operating a railroad, whether owned or operated under a contract, agreement, or lease, and the term ' employees ' as used in this Act shall be held to mean persons actually engaged in or connected with the movement of any train.'

Section 2. " From and after the first day of July, nineteen hundred and eleven, it shall be unlawful for any common carrier, its officers or agents, subject to this Act to use any locomotive engine propelled by steam power in moving interstate or foreign traffic unless the boiler of said locomotive and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put, that the same may be employed in the active service of such carrier in moving traffic without unnecessary peril to life or limb, and all boilers shall be inspected from time to time in accordance with the provisions of this Act, and be able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."

The amendatory act provides as follows: "An Act to amend an Act entitled 'An Act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate com-

merce to equip their locomotives with safe and suitable boilers, and appurtenances thereto ' approved February seventeen, nineteen hundred and eleven. Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled that Section Two of the Act entitled 'An Act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their locomotives with safe and suitable boilers, and appurtenances thereto ' approved February seventeen, nineteen hundred and eleven, shall apply to and include the entire locomotive and tender and all parts and appurtenances thereof.''

These acts clearly require common carriers engaged in interstate commerce to equip their locomotives with *safe* and *suitable* boilers and appurtenances thereto, and these acts apply to and include the entire locomotive and tender, and all parts and appurtenances thereof.

Let us assume, for the sake of argument, that the question as to whether or not, in some manner, the decedent came in contact with the hook was removed from all doubt, and that it was a conceded fact in the case that it was the proximate cause of his death, then, in that event, for whose consideration would have been the question as to whether or not the entire locomotive, including the tender, and all parts and appurtenances thereof, was in a proper condition, and safe and suitable to operate in the service to which the same is put, taking into consideration the hook upon the tender in the place where it was located?

Under these statutes, would that have presented a question of fact for the jury or of law for the court only? Would that have been asking the jury to pass upon the question of engineering, or, in other words, as to the proper construction of locomotives and

appurtenances, and as to whether or not that particular type of locomotive, with the hook attachment, was *safe* and *suitable* to operate in the service to which the same is put? Under such an assumed and conceded state of facts, it would have been established that an accident had taken place whereby one of the parts of the locomotive, as constructed, including the hook, was the proximate cause of the death of an employee engaged in interstate commerce.

I am of the opinion that under such a conceded state of facts the question would have been for the jury, and not one of law for the court. If my reasoning is correct it would be true as well of the case at bar.

It will be recalled that Riegel, one of the defendant's expert witnesses, admitted that this hook could be guarded when not in use, but that no thought or attention had been given to it. It would seem to follow from this evidence standing by itself that there was a question of fact for the jury to say as to whether or not there had been a violation of the Boiler Inspection Acts, to wit, was, or was not, the locomotive in question equipped with a *safe* and *suitable* boiler, tender and all parts and appurtenances thereof?

In the case of *Cline* v. *Northern Central R. R. Co.*, 181 App. Div. 203, the plaintiff was injured by having his gauntlet caught on the bolt upon a box car which projected one inch beyond the nut, and was located near the handhold and stirrup necessarily used by Cline in getting on and off the car.

This was an action under the common law, and the question of the defendant's negligence was held to be for the jury.

Similar in some respects to the case under consideration, is *Calhoun* v. *Great Northern R. R. Co.*, decided by the Supreme Court of Wisconsin, reported in 156 North Western Reporter, 198. In that case an action

was maintained to recover for the killing of plaintiff's intestate, and the negligence asserted was the violation of the Safety Appliance Statute, requiring the maintenance of secure running boards. The defect complained of was that one of the boards constituting the running board projected above the other a distance of from one-fourth to five-eighths of an inch. Kerwin, J., writing for the court, at page 200, said: "The serious question in this case is whether there is sufficient evidence to support the verdict. The jury found that the end of one of the boards of the running board projected above the adjacent board to such an extent as to constitute a defect or insufficiency in the car; that the deceased stumbled over the projecting board end, and as a result of such stumbling fell from the car; that defendant was negligent in allowing the defect to be in existence at the time of the injury." At page 201, the court continued as follows: "There is also much argument by counsel on both sides upon the common-law rule of proximate cause which has no relevancy to the case. It is conceded that the case is governed by the federal act, which fixes right of recovery for injury 'resulting in whole or in part' from negligence. It is sufficient that the defect contributed in any manner to cause the injury (*Alexander* v. *Minneapolis, St. P. & S. Ste M. R. Co.*, 156 Wis. 477; 146 N. W. 510). The Safety Appliance Act passed in April, 1910, and quoted from in the statement of facts, also imperatively requires common carriers to equip their cars with 'secure runningboards.' This statute imposes an absolute duty upon the common carrier to comply with the statute (*Delk* v. *St. Louis & S. F. R. Co.*, 220 U. S. 580; 31 Sup. Ct. 617; 55 L. Ed. 590)."

On the proposition as to whether a question of fact is presented in an action under the Federal Employers' Liabilty Act, Mr. Justice Day, in writing for the court,

in *Tex. & Pac. R. R. Co.* v. *Harvey,* 228 U. S. 324, said: " Where there is uncertainty as to the existence of negligence or contributory negligence, whether such uncertainty arises from a conflict of testimony or because, the facts being undisputed, fairminded men might honestly draw different conclusions therefrom, the question is not one of law." *Richmond & Danville R. R. Co.* v. *Powers,* 149 U. S. 43, 45.

The Supreme Court of the United States in *Choctaw, Oklahoma & Gulf R. R. Co.* v. *McDade,* 191 U. S. 64, affirmed a judgment in favor of the plaintiff where the question as to proper construction of the tank and appliances of a water spout was submitted to the jury.

I am also of the opinion that as to whether or not the hook was the proximate cause of the death of Truman H. Ford, was, under all the circumstances, a question of fact for the jury; that is, it was one for their determination how, and in what manner he met his death, although it had to be necessarily arrived at more or less from inference. The jury was told, however, in that respect, that they could not guess or surmise or speculate that the accident may or may not have happened in a certain way, but that a finding in that respect must be based upon a fair preponderance of evidence which convinced their reason and judgment. *Cline* v. *Northern Central R. R. Co.,* 181 App. Div. 203; *Johnson* v. *Hudson R. R. Co.,* 20 N. Y. 65, 73, 74; *Galvin* v. *City of New York,* 112 id. 223, 228, 229, 230; *McHugh* v. *Manhattan R. Co.,* 179 id. 378, 382; *Russell* v. *Erie R. R. Co.,* 177 App. Div. 13, 15; *Wazenski* v. *N. Y. C. & H. R. R. R. Co.,* 180 N. Y. 466.

There is no doubt whatsoever that the charge to the jury with respect to the degree of care the defendant was required to exercise in furnishing the decedent with a safe and suitable locomotive, and not causing the same to be properly inspected for the purpose

of discovering defects, if any, was more favorable to the defendant than it had a right to expect.

The mere fact that the defendant had used diligence or care to keep cars in a reasonably safe condition has been held to be not a question for the jury, and no defense to the suit; that the statute is commanding. *Wabash R. Co.* v. *United States,* 172 Fed. Repr. 864.

A disregard of the command of the statute (Safety Appliance Act) is a wrongful act, and where it results in damage to one of the class for whose special benefit the statute was enacted, the right to recover damages from the party in default is implied. If this act is violated, the question of negligence in the general sense of want of care is immaterial. *Tex. & Pac. R. R. Co.* v. *Rigsby,* 241 U. S. 43; *St. Louis & Iron Mountain R. Co.* v. *Taylor,* 210 id. 281, 294, 295.

Roberts on Federal Liability of Common Carriers, says, with respect to the Safety Appliance Laws, at page 1309, section 775: "The Federal Safety Appliance Act imposes an absolute and unqualified duty to maintain the equipment and appliances, required by its provisions, in secure condition. That the defect was not known, or could not have become known to the railroad company by the exercise of any care, is entirely immaterial in both personal injury actions and in suits for penalties."

For the reasons above stated, therefore, the motion for a new trial must be denied, with ten dollars costs.

Ordered accordingly.