# DELK v. ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 88. Argued March 9, 1911.—Decided May 15, 1911.

A car containing an interstate shipment, stopped for repairs before it reaches its destination and the cargo whereof is not ready for delivery to the consignees, is still engaged in interstate commerce and subject to the provisions of the Safety Appliance Acts.

*Chicago, Burlington & Quincy Railway* v. *United States, ante,* p. 559, followed to effect that under the Safety Appliance Acts of March 2, 1893, c. 196, 27 Stat. 531; April 1, 1896, c. 87, 29 Stat. 85; March 2, 1903, c. 976, 32 Stat. 943, the carrier is not bound only to the extent of its best endeavors but is subject to an absolute duty to provide and keep proper couplers at all times and under all circumstances.

Prior to the amendment by the act of April 22, 1908, c. 149, 35 Stat. 65, the carrier had a defense where contributory negligence on the part of the party injured was the proximate cause of the injury. *Schlemmer* v. *Buffalo, Rochester & Pittsburg Railway Co., post,* p. 590.

Where the court instructs the jury to the effect that they must find for plaintiff in case they believe he acted as a reasonably prudent man with his experience would have acted, but that they must find for defendant if they believe the plaintiff acted in a manner a reasonably prudent man would not have acted, the question of contributory negligence is fairly submitted.

Where the Circuit Court rightly construed the law involved and there was no error in the admission of evidence, and the Circuit Court of Appeals reverses the judgment on a mistaken view of the law, there is no reason to disturb the verdict of the trial court and the judgment of the Circuit Court of Appeals will be reversed and that of the trial court affirmed.

THE facts, which involve the construction of the Safety Appliance Acts and the duties and rights of carriers and their employés thereunder, are stated in the opinion.

*Mr. Luther M. Walter* and *Mr. W. A. Percy*, with whom *Mr. T. F. Kelley* was on the brief, for petitioner.

*Mr. Edward T. Miller*, with whom *Mr. W. F. Evans* was on the brief, for respondent.

*Mr. Assistant Attorney General Fowler*, with whom *Mr. Barton Corneau*, Special Assistant to the Attorney General, was on the brief, for the United States as *amicus curiæ*.

MR. JUSTICE HARLAN delivered the opinion of the court.

The St. Louis and San Francisco Railroad Company, a Missouri corporation engaged in commerce as a carrier of freight and passengers through Tennessee and other States, was sued in one of the courts of Tennessee by the plaintiff in error, Delk, for damages alleged to have been sustained by him while engaged in the discharge of his duties as an employé of the company. On the petition of the railroad company the case was removed to the Circuit Court of the United States on the ground of diversity of citizenship.

The declaration contained several counts, but the basis of the plaintiff's claim is the alleged failure of the railroad company to provide proper automatic couplers, as required by the act of Congress of March 2, 1893, known as the original Safety Appliance Act. 27 Stat. 531. The company filed a plea, putting in issue the material allegations of the declaration. It also proceeded on the ground that the injuries complained of were caused by the plaintiff's own fault in not observing proper care in doing the work in which he was engaged when injured.

Upon a trial of the case in the Federal court there was a verdict and judgment in favor of the plaintiff for $7,500. The company moved for a new trial, and the trial court

indicated its purpose to grant that motion unless the plaintiff by remittitur reduced the verdict and judgment to $5,000. The plaintiff complied with that condition, and judgment was entered against the company for the sum last mentioned. In the Circuit Court of Appeals the judgment was reversed and the case remanded for a new trial. *St. Louis & S. F. R. Co.* v. *Delk,* 158 Fed. Rep. 931, 939, 940. Thereafter this court allowed a writ of certiorari.

The title of the Safety Appliance statute declared it to be. "An act to promote the safety of employés and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers and continuous brakes and their locomotives with driving-wheel brakes, and for other purposes." 27 Stat. 531, c. 196.

The provisions of the act, so far as it is material to set them out, appear in the opinion of *Chicago, Burlington & Quincy Railway Co.* v. *United States,* just decided, *ante,* p. 559. The Circuit Court of Appeals well said, in the present case, that while the general purpose of the statute was to promote the safety of employés and travelers, its immediate purpose was to provide a particular mode to effect that result, namely, the equipping of each car used in moving interstate traffic with couplers, coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of the cars.

The material facts out of which the suit arises and as to which there seems to be no dispute are these: The defendant company received lumber to be carried from Giles, Arkansas, to Memphis, Tennessee. In order that the consignee might receive the lumber, the car containing it was delivered, October 2, 1906, to the Union Railway Company, known as the Belt Line. But it was promptly returned the next day to the present defendant because of a defect in the coupling and uncoupling appliance on one end of it. The car in question was in a new

yard of the defendant company, and was in a "string" of nine cars on what is known as "the dead track" in that yard. This track was called a team track, because it was so arranged that teams might be loaded and unloaded from alongside it.

On the morning after the return of the car, October 4, 1906, Delk, acting under instructions of the agent of the defendant company, undertook to switch certain cars out of the string of nine cars, so as to get two empty cars and three coal cars for removal to some other part of the company's line. The remaining facts upon which the Circuit Court of Appeals proceeded cannot, that court said, be better stated than they are in the brief for the Interstate Commerce Commission, in whose behalf special counsel appeared in that court. Those facts are set out in the opinion of the court below as follows: "The cars were on the track extending in the general direction of east and west, the engine being on the western end of the nine cars. The nine cars were drawn off this team track on to the lead track. The easternmost two cars, being empties, were left on the team track. The remaining seven cars were then pushed back on the team track. The easternmost two cars of the seven cars, loaded with brick, were left on the team track. The remaining five cars were again drawn on to the lead track, the three cars loaded with coal were left thereon. The engine, with the remaining two cars, again went upon the team track, and defendant in error undertook to couple the eastern end of the two cars attached to the engine to the western end of the two cars just left on the team track, but owing to a defect in the coupler on the eastern end of the two cars attached to the engine, the coupling could not be made without a man going between the ends of the cars. The defect on car K. C., F. S. & M. No. 21,696 was this: The chain connecting the uncoupling lever to the lock pin or lock block was disconnected, owing to a break in the lock

pin or lock block. The drawbar also had a lateral mo-
tion of four inches. Defendant in error undertook to hold
the drawbar away with his foot from the side upon which
he stood, so that the two couplers would couple by im-
pact. In so doing, his foot was badly injured. Plaintiff
in error had what is known as a car inspector or light re-
pair man in the new yard. It was his duty to make re-
pairs of the kind necessary on this car whenever found by
him. When the car was returned by the Belt Railway on
account of the defect in the coupler, plaintiff in error's in-
spector placed a red card about three inches by six inches
upon the car, and with a blue pencil wrote on said card,
'Out of Order.' This card is what is commonly known as
a 'bad order' card. The car had been on this team track
from 7: 30 a. m., on the third until 10 or 11 o'clock on the
fourth, when the accident to the defendant in error oc-
curred. There was evidence tending to show that the
inspection was made in the latter part of the third and
that the inspector thereupon ordered an employé to go to
the repair shops which were some two and a half miles
distant and get the material for repairing the coupler, but
that the employé did not return until after the accident.
The trial court held that the Safety Appliance Act applied
to the car with the defective coupler and that by virtue of
§ 8 of said act, plaintiff in error was denied the defense of
assumption of risk on the part of defendant in error, and
stated the language of the act to the jury."

The majority of the Circuit Court of Appeals (Judges
Severens and Richards) held that the car, with the defec-
tive coupler, was, at the time of the injury in question and
within the meaning of the act, engaged in interstate com-
merce. Judge Severens said: "The plaintiff in error claims
that it was not, and was laid by for repairs. But we are
inclined to think otherwise. Its cargo had not yet reached
its destination and was not then ready for the delivery to
the consignee wherewith the commerce would have ended.

Its stoppage in the yard was an incident to the transportation. The injury to the coupler was one easily repaired without being taken to a repair shop, and was being hauled upon its tracks when the accident occurred." Citing *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1; *Chicago, M. & St. P. Ry. Co.* v. *Voelker*, 129 Fed. Rep. 522. Judge Richards said: "The car which caused the injury had a defective coupler. It would not couple automatically. As a result, the plaintiff below, under orders, went between it and the car it was to be coupled to, and tried to force a coupling by using his foot. In consequence, his foot was caught in the impact of the cars and seriously injured. . . . After the coupler became defective and could not be coupled without going between the ends of the cars, it became unlawful for the railroad company to haul it, or permit it to be hauled, or used, on its line. It then became the duty of the railroad company to withdraw the car from use, and have it repaired to conform with the law before using it further. It did not do this, but continued to use the car in its defective condition. It could only do this under the penalty of the law. The car was defective, liable at any time to cause an accident, and it could not be kept in use at the constant risk of a serious accident, either upon the excuse that it would be inconvenient to withdraw it from the service, or that the company had sent for the required appliance, and would repair the car when it should be received. . . . This is a case peculiarly within the provisions of the act. A car loaded and being used in moving interstate traffic was found with a defective coupler. The car was marked 'in bad order,' and a repair piece sent for. After thus being notified of its condition, the car should have been withdrawn; but it was not, and the company kept on moving it about in connection with other cars, and finally ordered the injured employé to couple it to another car. This he tried to do with the natural result, and he has been crippled

for life. The case amply justifies the verdict, and the
judgment should be affirmed." Judge Lurton expressed
the view that the car in question was not employed in in-
terstate traffic at the time the plaintiff was injured; and
he was also of opinion that that question was, under the
evidence, for the jury. We concur with the majority of
the court below that the car in question was being used in
interstate traffic when the plaintiff was injured.

Nor were the Judges of the Circuit Court of Appeals in
accord as to the meaning and scope of the Safety Appliance
Act—Judges Lurton and Severens holding that the stat-
ute, reasonably construed, did not impose on the carrier an
absolute duty to provide automatic couplers of the kind
specified by Congress, and did not subject the carrier to the
penalties prescribed, if it appeared that due care and dili-
gence was exercised in meeting the requirements of the act.
Judge Richards was of opinion that the statute did not
make care and diligence on the part of the carrier ingre-
dients in the act condemned, and that, independently of
any inquiry as to its care or diligence, the carrier was liable
to the penalty, if the coupler used was not, in fact, such a
one as the statute required. The Circuit Court of Appeals,
in its opinion, said that the trial court gave the law to the
jury by stating the language of the statute, *but in such a
way as to lead the jury to suppose that the statute imposed an
absolute duty on the carrier to keep its cars in good order at
all times.* An order was therefore made reversing the
judgment of the Circuit Court and directing the case to
be sent back for a new trial. But this court granted a writ
of certiorari and the case is here primarily for the review of
the judgment of the Circuit Court of Appeals.

The construction of the statute, adopted by a majority
of the Circuit Court of Appeals to the effect that the act
did not impose upon the carrier an absolute duty to pro-
vide and keep proper couplers at all times and under all
circumstances, but was bound only to the extent of its

best endeavor to meet the requirements of the statute, has been rejected by this court in *Chicago, Burlington & Quincy Railway Co.* v. *United States*, just decided, *ante*, p. 559, and on the authority of that case we hold that the Circuit Court of Appeals erred in the particular mentioned.

One other matter requires notice, particularly in view of the decision to-day in *Schlemmer* v. *Buffalo, Rochester & Pittsburg Ry. Co.*, in which it is held that under the original Safety Appliance Act, and until that act was amended by that of April 22, 1908, 35 Stat. 65, c. 149, contributory negligence on the part of the party injured, where such negligence was the proximate cause of the injury, was a valid defence for the interstate carrier. It was contended at the trial of this case that the court erred in not instructing the jury, as matter of law, in accordance with the defendant's request, that the plaintiff was guilty of contributory negligence of such a character as to bar him from relief. The rule upon that subject is well settled by the authorities. It is that "when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury but may direct a verdict for the defendant." *Pleasants* v. *Fant*, 22 Wall. 116, 122; *Phœnix Ins. Co.* v. *Doster*, 106 U. S. 30, 32; *Randall* v. *Baltimore & Ohio R. R. Co.*, 109 U. S. 478, 482; *Con. Mut. L. Ins. Co.* v. *Lathrop*, 111 U. S. 612, 615. In the *Doster Case*, it was said that where a cause fairly depends upon the weight or effect of the testimony, it is one for the consideration and determination of the jury under proper instructions as to the principles of law involved. These rules being applied in the present case, we are clear that the court would have erred if it had taken the case from the jury and directed a verdict for the company. The evidence in this case was by no means all one way. There was fair ground for difference of opinion, and

the court's refusal to instruct the jury, *as matter of law*, that the evidence established the defense of contributory negligence was right. We here give the charge of the trial court on the issue of contributory negligence: "If you conclude that he did that as a reasonably prudent man with his experience and his observation and the facts and circumstances in the case as I have detailed or undertaken to state them here, and if you believe that that was done as a reasonably prudent man would have done it, then he would not be barred in this action; but if you believe that his conduct in the manner in which he attempted to couple that car, was such that a reasonably prudent man situated as he was under all the facts and circumstances that surrounded him there would not have attempted to do it, and that it was a negligent way to attempt to do it, and such a negligent way as a reasonably prudent man with his experience and observation would not have attempted, then he would be guilty of negligence, and that negligence, if you believe it, was the proximate cause of the injury, would be such as to bar him in this action, and that question I leave to you entirely without intimating any opinion about it." It thus appears that the question of contributory negligence was fairly submitted to the jury and it was decided against the carrier. Upon the effect of the evidence relating to contributory negligence by the plaintiff, the Circuit Court of Appeals declined to express any opinion, saying "as the case must be remanded for a new trial, we need not express our opinion upon the evidence which may not assume the same aspect upon the new trial."

In this state of the record what must be done with the case? As the case is here upon certiorari to review the judgment of the Circuit Court of Appeals, this court has the entire record before it with the power to review the action of that court as well as direct such disposition of the case as that court might have done when hearing the writ of error sued out for the review of the action of the

Circuit Court. *Lutcher & Moore Lumber Co.* v. *Knight,* 217 U. S. 257, 267. In this view, the judgment of the Circuit Court of Appeals must be reversed, because, for the reasons above stated, it erred in not holding that the statute, under which the case arose, imposed on the carrier an absolute duty to provide its cars, when moving in interstate traffic, with the required couplers, and keep them in proper condition, and that, too, without any reference to the care or diligence which might have been exercised in performing its statutory duty. But on looking further into the record from the Circuit Court, we find that no error of law was committed by that court; for it proceeded on the construction of the statute which this court has approved in *Chicago, Burlington & Quincy Railroad* v. *United States,* just decided, *ante,* p. 559. Nor did the Circuit Court commit any error in respect to any issue of contributory negligence. It properly submitted that question to the jury. Therefore, the reversal of the judgment of the Circuit Court of Appeals, on the grounds we have above stated, constitutes no reason why the judgment of the trial court should be disturbed.

For the reason stated, the judgment of the Circuit Court of Appeals must be reversed; but as we do not perceive that any error of law was committed in the Circuit Court, to the prejudice of the carrier, the judgment of the latter court must be affirmed.

*It is so ordered.*


MR. JUSTICE LURTON did not participate in the decision by this court in this case.