By the Court.
This was an action for wrongful death. After proper allegations as to the or-, ganization of the defendant companies, the appointment of Eli M. West as receiver, and the operation of the interurban road for defendants through the city of Marion, it is alleged in the petition that West, as such receiver, owned, controlled and operated passenger cars propelled by electricity at the time of the committing of the wrongful acts by which the plaintiff’s decedent, Callie Leeper, was killed, without such cars, and especially the car which caused the injury, being “equipped in addition to the hand brake in use on said car with an air or electric power brake or apparatus, capable of applying to all brake shoes and wheels of said car a maximum permissible braking pressure and of automatically reducing such braking pressure as the speed of said car decreases;” and wilfully, wantonly and carelessly *203 operated said car at the place where decedent was killed, without said car being equipped with any air or electric power brake or apparatus in addition to the hand brake in use on said car, which was propelled by electricity; and negligently, unlawfully and wrongfully permitted said car to run, propelled by electricity, without being equipped with an air or electric power brake as above set forth.
The petition further alleges that the decedent in the exercise of reasonable care and caution, in company with' another, was traveling northward on Park street in a top buggy drawn by a single horse at a slow rate of speed. The petition then sets, forth a detailed account of the acts which caused the death of the decedent, and especially sets out the wrongful acts of the agents of said receiver in operating said car at a rapid, unlawful and reckless rate of speed without reasonable care and caution for the safety of the public and of the decedent, whereby said car ran against and over said buggy, and decedent was killed.
The answer of defendants was substantially a general denial.
The air or electric power brake, the absence of which is complained of in the petition, is the brake which is required to be provided by Section 9149-1, General Code. The description given in the statute is copied in the petition as above set out.
The case was tried twice in the trial court. On the first trial the jury found a verdict for the plaintiff, and, on the second trial, for the defendants. The judgment entered in the trial court on this *204 verdict was affirmed by the court of appeals, and error is prosecuted here.
The plaintiff in error earnestly complains of the attitude of the trial court in the case. He insists that it gave undue prominence and improper emphasis to the claims urged by the defendants, while treating lightly the testimony and contentions of the plaintiff.
On the trial the parties stipulated that an absent person would if present qualify as an expert in air brake appliances and construction and would testify that there is no air or electric power brake manufactured capable of applying to all the brake shoes a maximum permissible braking pressure and of automatically reducing as the speed of a car decreases ; that there were not such prior to September, 1914, nor are such brakes now manufactured.
The defendants also called a witness who testified that he had never heard of and had no knowledge of such an air brake.
The court in its charge instructed the jury to “disregard the claim of negligence for failure to equip the car with the kind of brakes complained of for the reason that the undisputed evidence discloses that compliance with such statute is possible [italics ours] because no brakes such as the statute requires are manufactured. Therefore, the rule of law that ordinarily applies that under such circumstances the violation of a statute is prima facie evidence of negligence, cannot be applied in this case.”
We think that the court here overstated the effect of the testimony and that this portion of the *205 charge contains a vital infirmity prejudicial to the plaintiff.
The defendants’ testimony did not disclose that compliance with the provisions of the statute was “impossible.” The stipulation as to the absent witness was that there were no such brakes manufactured; and the witness who was called testified that he had no knowledge of any such device.
The state-and federal courts are in harmony in holding that statutes requiring safety appliances should be given such a construction as will accomplish the purpose of their enactment.
The federal supreme court has held that the duty of the carrier is not merely that of exercising reasonable care in providing the prescribed appliance, and maintaining it in operative condition, but is absolute. St. Louis, Iron Mountain & Southern Ry. Co. v. Taylor, Admx., 210 U. S., 281; Chicago, Burlington & Quincy Ry. Co. v. United States, 220 U. S., 559, and Delk v. St. Louis & San Francisco Rd. Co., 220 U. S., 580.
In St. L., I. M. & S. Ry. Co. v. Taylor, supra, the court say at page 294: “We have nothing to do. but to ascertain and declare the meaning of a' few simple words in which the duty is described. It is enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard:’ 'There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the legislature was to supplant *206 the qualified duty of the common law with an absolute duty deemed by it more just.”
In 18 Ruling Case Law, 592, it is stated: “A failure to comply with the statute is not excused by the fact that the offending appliance is not manufactured with a guard, or that guards are not supplied by other employers.”
The presumption is that when our general assembly passed the section here under investigation, (Section 9149-1, General Code), it did so after intelligent investigation. Of course if the provisions of this statute are impossible of fulfillment the court would not attempt to enforce them, for the court would presume that the legislature did not intend to do an absurd or impossible thing. But it does not follow that a mechanical contrivance or appliance is impossible of practical construction or operation simply because one or more persons may not know of such a contrivance. It would be easy to nullify statutes of this character if those upon whom they are intended to operate should never produce the thing required and then avoid compliance on the ground that it had not been produced.
The defendants did not show in this case that this requirement was “impossible” of execution. We think it may be fairly said that in several other portions of the charge the trial court, perhaps by inadvertence, unduly accentuated the phases of the case which were favorable to the defendants or unfavorable to the plaintiff.
*207 The judgments of the courts below will be reversed.

Judgments reversed.

Nichols, C. J., Matthias, Johnson, Donahue, Wanamaker and Robinson, JJ., concur.