Yazoo & M. V. R. Co. *v.* Cockerham.

(Division B.  Feb. 25, 1924.)

[99 So. 14.  No. 23481.]

1. Master and Servant. *Statutory duty to maintain automatic couplers absolute.*

   The federal Safety Appliance Act (27 Stat. 531 [U. S. Comp. St. sections 8605-8623]) imposes upon railroads engaged in interstate commerce the absolute duty to maintain its couplers in such condition that they will always couple automatically by impact, and a failure to do so makes them liable for any damages resulting therefrom to the employee attempting to make the coupling.

2. Master and Servant. *Evidence held sufficient to show defective coupling appliance.*

   Where the testimony for the plaintiff shows that because of the use of a nail instead of a cotter pin in the drawhead of a car, a coupling cannot always be made by the ordinary use of the lift lever on the car, caused by the nail catching on a part of the drawhead, then this is sufficient testimony of a defective coupling appliance, and of a violation of the Safety Appliance Act.

3. Master and Servant. *Evidence of attempt to use coupling appliance before going between cars held unnecessary.*

   Where the testimony shows such facts for the plaintiff it is not necessary to prove that the injured employee attempted to make use of the hand lift lever before going between the cars to properly adjust the coupling appliance,

Appeal from circuit court of Bolivar county.

Hon. W. A. Alcorn, Jr., Judge.

Suit by H. L. Cockerham, administrator, against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed on condition of remittitur.

*Chas. N. Burch, H. D. Minor,* and *Shands, Elmore & Causey,* for appellant.

The whole controversy in this case is whether the coupler on the head car of the train met the requirements of the Safety Appliance Act of Congress (27 Stat. at L. 531).

The question therefore in this case, is, whether the tender of the engine and the head car of the train could be coupled by impact "without the necessity of men going between the ends of the cars." As we shall hereafter point out, the proof without conflict shows that there was no necessity for Cockerham to go between the cars.

Our contention is that if it was possible to couple the cars by impact by the brakeman using and manipulating the lever at the end of the car, and he failed to use and manipulate such lever, and is injured, then the brakeman is the author of his own injury and there can be no recovery.

The object of the statute was to prevent the necessity of men going between the cars to adjust the couplers so that they couple. That necessity does not exist when the coupler can be adjusted by use of the lever on the outside of the car. In short, a coupler does not fail to couple by impact in the sense of the statute until after the switchman or brakeman has first attempted to use device provided for his safety, that is, the lifting lever.

The whole proof in this case shows that the coupler was in good operative condition and that the lever was operating properly and that the lever could be adjusted either so that a coupling could be made, or so that coupling

could not be made.  Cockerham did not attempt to use the lever at all.

We. are aware that the courts have held that the duty resting upon railroad companies relative to safety appliances is absolute, and that it is no excuse to say that the railroad company exercised due care and diligence. *A. & V. R. R. Co.* v. *Dennis,* 128 Miss. 298; *C. B. & Q.* v. *U. S.,* 220, 559; *Delk* v. *St. L. & S. F. R. R. Co.,* 220 U. S. 580.

In discussing the leading cases in which railroad companies have been held liable, or not liable, for injuries to brakeman while between cars in making couplings or uncouplings, we shall show that in those cases in which the railroad companies have been held liable, the brakeman recovered because he did not go in between the cars until after he had attempted to use, without success, the lift lever, that is, the safety device provided for his protection, and that the brakeman has not been permitted to recover in those cases in which he attempted to effect a coupling or uncoupling without first resorting to the use of the lift lever.  The leading case in Mississippi is *A. & V. Ry. Co.* v. *Dennis,* 128 Miss. 298.  Coming now to the United States supreme court cases see *C. B. & Q.* v. *U. S.,* 220 U. S. 559; *Chicago, Rock Island & Pacific Ry. Co.* v. *Brown,* 299 U. S. 317; *Minneapolis, St. Paul, etc., Ry. Co.* v. *Popplar,* 237 U. S. 396; *San Antonia & A. P. R. Co.* v. *Wagner,* 241 U. S. 476; *Atlantic City R. R. Co.* v. *Parker,* 242 U. S. 56; *Lang* v. *New York Central R. R. Co.,* 255 U. S. 455.; *McCalmont* v. *Penn. R. R.* (C. C. A.), 283 Fed. 741; *Payne* v. *Calvin,* 276 Fed. 15; *Tenn., etc., R. R.* v. *Drake,* 276 Fed. 393; *Nichols* v. *C. & O. R. R.,* 195 Fed. 913; *P. & A. R. R.* v. *McKibbin,* 259 Fed. 476.

The case of *Chesapeake & Ohio R. R.* v. *Charlton,* 247 Fed. 34 (same case on second writ of error, 256 Fed. 988, same case, a *certiorari* denied by the United States supreme court, 249 U. S. 614), is very much in point and very similar in its facts to the instant case. In that case a judgment in favor of plaintiff was reserved.  The plain-

tiff's intestate, a brakeman, was injured while attempting to couple cars. On the first impact the coupling failed to make and the brakeman thereupon went in between the cars and was crushed. It was not shown in that case, or in this case, why the brakeman went in between the cars instead of resorting to the lifting lever. See, also, *St. Louis Southwestern Ry. Co. v. Bounds* (Texas Civil Appeals), 244 S. W. 1099.

The jury returned a verdict of thirty thousand dollars in this case. We submit that it is too plain for argument that such a verdict is grossly excessive. The plaintiff was entitled to recover two items of damage, first, the present worth or value of the pecuniary benefits of which the beneficiary (mother) was deprived; second, damages for the pain suffered by the deceased between the time of his injury and the time of his death. It is apparent, therefore, that to purchase an annuity of nine hundred dollars a year for eleven and ten-hundredths years would cost considerably less than ten thousand dollars. We submit that five hundred dollars to one thousand dollars would be the maximum amount which should be allowed for the conscious pain suffered by him. *Northern Pacific Ry.* v. *Merkl,* 198 Fed. 1; *Great Northern Ry. Co.* v. *Capital Trust Co.,* 242 U. S. 144; *Gulfport & Miss. Coast Traction Co.* v. *Keebler,* 94 So. (Miss.) 795.

*Sillers, Clark & Sillers,* for appellee.

Counsel lays down the proposition, that "before a brakeman can insist that a coupler does not comply with the law, he must, first, have attempted to adjust and manipulate the coupler with the lever, so as to put the couplers in position to engage each other." We have carefully read every decision cited by counsel in his brief and, also, every decision which we could find, bearing on this question, and we have yet been unable to read a decision in which a recovery was denied plaintiff, *in the case of a defective coupler* because of the fact that he did not attempt to use the lift lever to make the automatic coupling.

Counsel says, that the jury might have concluded from certain testimony that the use of a nail in lieu of a cotter key was an irregularity, if not a defect in the coupling, when they had positive, direct testimony that it was a defect. We are absolutely at a loss to see how counsel arrives at the conclusion, that it distinctly appears that Cockerham did not attempt to use the lever. No witness in the case testified whether he attempted to use it or not, and no witness was asked that question. We respectfully submit to the court that the evidence, as a whole, does not show that the coupler was in operative condition and would couple by impact, even if the lever were used, without the necessity of men going between the cars.

While it is true that the object of the statute was to prevent the necessity of men going between the cars to adjust the couplers, and while, if he could stand outside and adjust it by lever, it would not be necessary for him to go between them, yet to say that until a man had first used the lever and it had failed to work, the statute would not apply to a case of injury, occurs to us, would nullify the entire statute. All that the brakeman is required to do is to act as any ordinarily prudent man would do under the circumstances.

But under the Safety Appliance Act, once the defect is shown in the coupler, which is such a defect as would prevent the cars from coupling automatically upon impact, at all times, then it matters not how negligent the employee might have been, it is no bar to his recovery, provided the defect contributed to the injury. 2 Roberts Federal Liabilities of Carriers, page 1322, sec. 785; *Spokene & I. E. R. Co.* v. *Campbell,* 241 U. S. 497, 60 Law Ed. 1125; *Smith* v. *Atlantic Coast Line Co.,* 210 Fed. 761; *Grand Trunk Western Railway Co.* v. *Lindsay,* 58 Law Ed. 838.

A careful study of the cases cited by counsel will convince this court that we are correct in our position and that counsel is incorrect in his reasoning as to what these cases hold. In each one of these cases, the only evidence

in the record tending to show a defective appliance was the fact that the injured employee attempted to use the lift lever and it failed to work—and this was the sole evidence upon which the court held that the proof was sufficient to submit the case to the jury on the question of whether or not the coupler or appliances were so defective as not to comply with the Safety Appliance Act. In none of these cases was there any other proof tending to show a defective condition of the coupler or other appliances. In none of these cases was the basis of the decision as to liability the fact that an attempt had been made to use the lift lever, but the basis of the decision as to liability was the fact that the cars failed to couple automatically by impact—the coupler or other appliances were so defective that they did not comply with the Safety Appliance Act— and the only proof introduced as evidence to show such defective condition, was that the injured employee attempted to make the coupling by use of the lift lever and failed in his attempt.

We call the court's attention to *Delk* v. *S. L. & S. F. R. R. Co.*, 55 L. Ed. 590, where the defendant was attempting to make a coupling and the coupling on the car was defective in that the chain connecting the uncoupling lever to the lock pin was disconnected, owing to a break in the lock pin. No effort of any kind is shown by the statement in the record on the part of Delk to use a lift lever, and the court held that the Railroad Company was liable in that case because of the absolute duty imposed upon it to provide its cars when moving in interstate traffic, with couplers which would couple automatically upon impact. And to keep them in proper condition. See, also, *St. Joseph & G. I. R. Co.* v. *Moore*, 243 U. S. 310, 61 L. Ed. 741; 2 Roberts Federal Liability of Carriers, sec. 807, page 1345; *Grand Trunk W. R. Co.* v. *Lindsay*, 58 L. Ed. 838.

Coming now to a discussion of the amount of the judgment, we most earnestly insist to the court that the verdict of the jury in this case assessing the damages to be paid to Mrs. Cockerham at thirty thousand dollars is not

so grossly excessive as would warrant this court in reversing the case on account thereof, or in entering a *remittitur.*

The law vests the right of fixing the amount of damages in a jury, and, as we understand the law, this court will not interfere with the exercise of this power vested in the jury unless the award made by the jury is so grossly excessive as to evidence passion, prejudice or corruption. On the question of damages generally in cases of this sort, we refer this court to *L. & N. R. R. Co.* v. *Holloway,* 62 L. Ed. 876. See, also, *The Craft case,* 237 U. S. 648.

*Charles N. Burch, H. D. Minor* and *A. W. Shands,* for appellant in reply.

Presumptions cannot be built upon presumptions.

Plaintiffs cannot presume from the fact that Cockerham was an experienced brakeman, that he attempted to use the lift lever and then, on the basis of this presumption, presume that after attempting to use the lift lever he found the same would not operate, and then on the basis of both presumptions, presume that he therefore went in between the cars. *Looney* v. *Metropolitan R. R. Co.,* 200 U. S. 488; *M. K. & T. R. R.* v. *Foreman,* 174 Fed. 383; *Douglas* v. *Mitchell,* 35 Pa. 433.

However, there is no basis in this record for assuming that Cockerham attempted to use the lift lever. On the other hand, three witnesses described what Cockerham did, and no one of them even suggested that Cockerham attempted to use the lift lever. As they were all observing Cockerham up to the time he went in between the cars, and were asked to tell what Cockerham did, and as no one of them states that he used the lift lever, this in itself is positive proof that he did not use the lift lever.

Argued orally by *Chas N. Burch,* for appellant and *Walter Sillers, Jr., & Chas. Clarke,* for appellee.

Sykes, P. J., delivered the opinion of the court.

This suit was instituted in the circuit court to recover damages because of fatal injuries sustained by I. G. Cockerham, a brakeman in the employ of the appellant railroad company. The suit is brought under the federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665). The deceased, Cockerham, sustained fatal injuries while attempting to effect a coupling between the tender of the engine and the first car of the train.

The cause was submitted to the jury and a verdict returned in favor of the appellee, administrator, plaintiff in. the court below, for the sum of thirty thousand dollars. Judgment for this amount was rendered. From which judgment this appeal is here prosecuted.

The declaration was in two counts. The first count upon which the cause was tried and judgment rendered in effect alleged. that the car which deceased was attempting to couple to the engine had a defective coupler in which a nail was placed instead of a cotter pin; that by reason of this defective appliance when the engine backed into the car to make the coupling the cars failed to couple. Whereupon the deceased brakeman stepped between the engine and car to fix the coupling when the engine backed against him fatally injuring him. It is unnecessary to state the second count of the declaration. There was a plea of the general issue to the first count of the declaration.

The real question in this case is whether or not the coupler on the car was defective under the federal Safety Appliance Act (U. S. Comp. St., sections 8605-8623) in that the couplers would not couple automatically by impact. That part of section 2 of this act in question here (27 Stat. 531 [U. S. Comp. St. section 8606]) is as follows:

"It shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be

uncoupled without the necessity of men going between the ends of the cars.''

The testimony in the case shows that the accident occurred in the morning at Cleveland, Miss. The deceased brakeman rode to the scene of the injury on the tender of the engine for the purpose of coupling the engine to the train. Before his engine reached the train he stepped to the ground, and whether or not he tried to operate the coupling apparatus by the use of the lever with his hand is not shown. No eyewitness testified fully to all of the deceased's movements after he stepped from the tender of the engine. He signaled the engineer to back into the train for the purpose of effecting a coupling. The coupling was not made. The deceased then signaled the engineer to go forward and shortly thereafter the engineer states he received another signal from the deceased to back into the train, and did so, and Cockerham was mashed between the two drawheads and sustained fatal injuries.

After Cockerham was injured the coupling apparatus on this car was examined. It contained a nail bent into place instead of a cotter pin. It is the theory of the appellee that this nail prevented the coupler on this car from working properly and coupling automatically by impact.

The foreman of the car department at this point testifies that he examined this coupler shortly after the accident, that there was a nail in it instead of a cotter pin, but that the coupler was in first class condition as far as the operation was concerned; that he broke this nail in making his investigation and replaced it with a cotter pin. The next morning another examination was made of this coupler, and tests were made to see whether or not it would couple automatically by impact. Before these tests were made the cotter pin was taken out and a nail similar to the one in the coupler at the time of the accident was put there instead of the cotter pin. The testimony at to what happened at this time has received

our most careful consideration. Several witnesses for
the appellant company testified to the proper working
of this coupler. While on the other hand other witnesses
who were present at this investigation testified to the
effect that the coupling could not be made in the ordi-
nary way; that they tried to make the coupling two or
three times but failed; that the witness then told the fore-
man he would show him how to make the coupling; wit-
ness then held the lever up to keep the knuckle lock from
hitting the side of the drawhead; he dropped the lever
and the lock fell and held it clear so that there was no
chance for the block to drop; that he did this by manip-
ulating the lever; that the effect of the use of the
nail in place of the cotter pin was that it stuck out far
enough to keep this part of the appliance from properly
falling; that the nail would rest on the top of the draw-
head to keep the lock from properly falling; that, if you
hold it clear and let it fall clear, it would not hang; that,
when the lock did not fall, it would not couple by impact;
that it was not necessary to go in between the cars to make
this coupling, but that he could hold the lock clear of
the drawhead with the lift lever; that the nail would hit
the top of the drawhead and interfere with the coupling
if you did not hold it clear. This witness further testi-
fied that in order to effect this coupling it was neces-
sary to hold the lift lever up until the impact, and that
this was not the customary way of operating the lift
lever; that in the ordinary use of the lift lever a brake-
man is not required to hold the lever after its proper
manipulation. There was also testimony to the effect
that the drawhead on the car showed evidences of having
been scratched by the nail, from which it could be in-
ferred that the nail interfered with the proper working
of the appliance.

During the trial of the case experiments were made in
the presence of the jury. A similar car with a like draw-
head was there used and a nail used in place of the cot-
ter pin. From this testimony it is impossible for us to

tell just exactly what took place in the presence of the jury.

From all of this testimony we think the jury was warranted in believing that the coupler on the car which the deceased was attempting to couple would not couple automatically by impact when the lever was manipulated in the ordinary way, but it was necessary not only to ma-. nipulate the lever, but to hold it in proper position until the coupling was made, and that the usual method is not to continue to hold the lever after it had been properly manipulated.

There was no testimony in the case to show whether or not the deceased had knowledge of the alleged defect in this appliance or knew that the coupling could be made by holding the lift lever at the time of the impact.

It is the contention of the appellant that under all the testimony it was entitled to a peremptory instruction because it devolves upon the plaintiff to show that the deceased attempted to make a coupling by the use of the hand lifter before going between the cars. To quote the exact language of counsel for the railroad company as to their contention in this case:

"Our contention is that if it was possible to couple the cars by impact by the brakeman using and manipulating the lever at the end of the car, and he failed to use and manipulate such lever, and is injured, then the brakeman is the author of his own injury, and there can be no recovery."

The Safety Appliance Act imposes upon railroads the absolute duty to maintain its couplers in such condition that they will always couple automatically by impact, and a failure to do so makes them liable for any damages resulting therefrom to the employee attempting to make the coupling. *Railway Co.* v. *Dennis,* 128 Miss. 298, 91 So. 4; *Railroad* v. *United States,* 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582; *Delk* v. *Railroad,* 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590.

134 Miss.—57.

In many of the cases there was no defect shown in the coupling appliance save the fact that the injured employee attempted to manipulate the lever which for some reason failed to work. In the case at bar while the testimony is silent as to any attempt to manipulate the lever, yet the testimony of the plaintiff is to the effect that the coupling appliances would not at all times work by the usual and customary manipulation of the lever. We think the jury were warranted from this testimony in believing this appliance defective and that it was not necessary before a recovery may be had to prove that the employee attempted to use the lift lever on the defective coupling appliance.

The peremptory instruction for the defendant was properly refused.

The instructions when considered as a whole properly submitted to the jury the question of liability under this act.

The beneficiary in this suit is the mother of deceased. Deceased at the time of his death was thirty-two years old. His mother, the beneficiary, was in her sixty-sixth year. The deceased contributed to her support probably nine hundred dollars a year. The life expectancy of Mrs. Cockerham was a little over eleven years. For ten thousand dollars she could purchase an annuity in an insurance company of over one thousand dollars a year. We therefore think her pecuniary loss for which she is entitled to compensation would amount to a sum not exceeding ten thousand dollars.

In addition to this she is entitled to recover for the pain and suffering of the deceased from the time of his injury to the time of his death. He lived probably about eight hours and suffered intense pain as a result of these injuries. He was badly mashed through the body and had a number of his bones crushed. During this time he was under the care of and was being administered to by competent physicians. We think five thousand dollars is amply sufficient as a recovery for the pain and suffering.

For these reasons it follows that in our opinion the verdict in this case is grossly excessive. If the plaintiff (appellee) will enter a *remittitur* of fifteen thousand dollars the judgment will be affirmed; otherwise, it will be reversed and the cause remanded.

*Affirmed and remittitur.*