## No. 11,100.

### AUSLENDER, ADMINISTRATOR v. BOETTCHER, ET AL., RECEIVERS.

Decided December 7, 1925.    Rehearing denied January 11, 1926.

Action for death of an employe of a railroad company. Judgment of dismissal.

### *Reversed.*

1.   APPEAL AND ERROR—*Railroads—Personal Injuries—Pleading.*   In an action against a railroad company for personal injuries, the question of alleged violation of the federal Hours of Service Act will not be considered on review where there is no averment that it contributed to the injury as a proximate cause, or that there was any connection between the accident and the act of working over-time.

2.   RAILROADS—*Personal Injuries—Hours of Service Act.*   The federal Hours of Service Act does not make carriers insurers of the safety of their employes.   There must be averment and proof, in a personal injuries case, that such excessive service contributed as a proximate cause of the injury before the carrier can be held guilty of a violation of the statute in this particular.

3.   *Safety Appliance Act—Air Brakes.*   A carrier which operates a freight train composed in part of cars properly equipped with air brakes, and others whose power brakes are defective or out of repair, violates the Safety Appliance Act, unless it shows that the defective cars are placed in the train at the rear of all others.

4.   *Safety Appliance Act.*   The federal Safety Appliance Act discussed and construed.

5.      *Personal Injuries—Safety Appliance Act—Contributory Negligence.* In an action against a railroad company for personal injuries where plaintiff's contributory negligence and defendant's violation of the Safety Appliance Act are concurring proximate causes of the accident, the former is to be disregarded and should be eliminated.

6.      EVIDENCE—*Contributory Negligence—Jury Question.* In a personal injuries case, the evidence being in conflict as to contributory negligence, the question is one for determination by the jury.

7.      COURTS—*Federal Decisions.* State courts must follow the decisions of the Supreme Court of the United States construing federal statutes.

8.      *Federal Statutes—Construction.* State courts should not, in advance of decisions by the United States Supreme Court, undertake the task of ascertaining and declaring the meaning of federal statutes, unless the facts in the case under consideration require it.

*Error to the District Court of the City and County of Denver, Hon. Henry J. Hersey, Judge.*

Mr. EDWARD M. AUSLENDER, Messrs. BARTON & KAMUCHEY, for plaintiff in error.

Messrs. SMITH & BROCK, Mr. ELMER L. BROCK, for defendants in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS is an action by Edward M. Auslender as administrator of the estate of Roy Watkins, deceased, to recover from the receivers of the Denver & Salt Lake Railroad Company damages for the death of Watkins which it is alleged was caused by their failure properly to equip with a sufficient number of power brakes, and maintain the same in good order, the cars in their freight train which they were then operating and in the consequent wreck of which train

Watkins was killed. The action is based upon, and the parties are in accord that the controversy is to be determined by applying thereto the provisions of, the Safety Appliance, Hours of Service, and Employers' Liability, Acts of Congress. The provision of the 1893 Safety Appliance Act here involved is section 1, which requires a carrier to equip a sufficient number of cars in a train with power or train brakes so that the engineer of the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brakes. The section was amended in 1903 by requiring that not less than 50 per cent of such cars shall have their brakes used and operated by the engineer, and by further providing that the Interstate Commerce Commission after a full hearing might from time to time increase the minimum percentage of such power brake cars in a train. It seems that the commission has increased the minimum to 85 per cent. The Hours of Service law of 1907, prohibits continuous service of train employees for more than sixteen hours, except in circumstances set forth in section 3. The Employers' Liability Act does away with or abridges the defenses of contributory negligence and assumption of risk.

At the close of plaintiff's evidence the defendants' motion to take the case from the jury and for a nonsuit was denied; but when the defendants, after producing their evidence, rested, the court sustained their motion then interposed for a directed verdict in their favor and dismissed the action. This judgment of dismissal was rendered in October, 1923. The grounds of defendants' motion for a directed verdict are, that the entire evidence failed to establish a violation of the statutes by the defendants, but on the contrary shows that the sole cause of the accident was the negligent act of the deceased Watkins in the handling of the brakes.

1. One of the points relied upon by the plaintiff for reversal is that, as shown by the undisputed evidence, Watkins was compelled by the unlawful order of his superiors to serve as engineer for more than twenty consecutive hours

without rest or sleep. This it is said, constitutes a violation by the defendant employers of the Hours of Service Act. We are not required to pass upon this point because there is no averment in the complaint that this alleged violation of the law in any way contributed to the injury as a proximate cause or that there was any connection whatever between the accident and the act of working over-time. This Hours of Service Act of Congress does not make carriers insurers of the safety of employees. *St. Louis, Iron Mt., etc., R. R. Co. v. McWhirter,* 229 U. S. 265, 280, 33 Sup. Ct. 858, 57 L. Ed. 1179. There must be averment and proof that such excessive service did contribute as a proximate cause to the injury complained of before the carrier may be held guilty of a violation of the statute in this particular.

2. The opinion of the learned trial judge in directing a verdict for the defendants is reproduced in the brief of the employers. His conclusion of law was predicated on *United States v. Baltimore & Ohio R. R. Co.,* 176 Fed. 114, followed in *United States v. Chesapeake & Ohio Ry. Co.,* 247 Fed. 49. In the former case the decision was by a district judge. The judgment in that case was affirmed by the Circuit Court of Appeals of the Third Circuit, 185 Fed. 486. The affirmance, however, was upon the ground that the record was in such condition that the reviewing court could not determine what particular evidence applied to any one of the twenty-two separate counts or causes of action in the complaint. The court, moreover, expressly withheld any expression of its opinion as to the construction placed upon the statute by the trial district judge. In the Chesapeake & Ohio Ry. Co. case the Circuit Court of Appeals of the Fourth Circuit referred approvingly to the Baltimore & Ohio case. *Virginian Ry. Co. v. United States,* 223 Fed. 748, by the Circuit Court of Appeals of the Fourth Circuit seems to be inconsistent, in part at least, with the decision of the same court in the Chesapeake & Ohio case in 247 Fed. 49. The latter case and the Baltimore & Ohio case we think must be considered as modified, if not overruled, by the Supreme Court of the United States in *New York Central*

R. R. Co. v. United States, 265 U. S. 41, 44 Sup. Ct. 436, 68 L. Ed. 892, a decision which we think requires us to reverse the judgment now under consideration. This case was decided in April, 1924, and, of course, the trial judge in the instant case did not have the benefit of it at the time of his decision in October, 1923, or when the motion for a new trial was denied. Had it been then announced and brought to his attention, doubtless the trial court would have followed it just as this court must now do. In this case there was certified to the Supreme Court by the Circuit Court of Appeals this specific question: "May an interstate carrier lawfully operate a car equipped with power brakes past an available repair station to destination when its power brakes, becoming out of order in transit, have been cut out of the power brake system of the train and when more than eighty-five per centum of the remaining cars of the train are equipped with power brakes controlled by the engineer of the locomotive?" The Supreme Court considered the question as if the word "remaining" were stricken out. So far as concerns the question now under consideration it is to be said that in the well considered opinion by Mr. Justice Butler, in discussing the Safety Appliance Act there involved, it was held that where cars in a freight train whose power brakes are defective or out of repair are associated with other cars therein having properly equipped power brakes the carrier may not legally operate such a train unless the defective cars are "placed in the train to the rear of all cars having their brakes operated by the engineer." True, the specific question there decided is not the same as that here raised, but the principle of that decision is applicable. And that is so because if a carrier may not operate a freight train composed in part of cars properly equipped with power brakes and other cars whose power brakes are defective or out of repair unless the latter are placed in the train to the rear of all the former, it necessarily follows that a carrier which operates such a train violates the Safety Appliance Act unless it shows, and this burden is on it, that the defective cars are

so placed. It may be a proper inference from the evidence in this case as a whole, that these defectively equipped cars were improperly associated with or commingled in the same air line with properly equipped cars. But we do not wish to put our decision of this assignment upon the proposition that the plaintiff has affirmatively shown a violation or that the burden of proof in that particular is on him. Certainly one object of the statute is to discourage the use of hand brakes except in yards or in making up or breaking up of trains elsewhere, and to have all cars in a train at least to the statutory minimum properly equipped with power brakes so that the engineer in charge of a train may be able at all times to control its speed without requiring brakemen to use the common hand brake for that purpose. While, under the Safety Appliance Act as construed by the Supreme Court of the United States in the New York Central case above cited, the carrier may in such circumstances lawfully haul hand brake cars in trains having the prescribed number of properly equipped power brake cars, still it may do so only when the hand brake cars are not associated with, or in the same direct air line with the other cars having properly equipped power brakes, but are placed to the rear of all other cars whose power brakes are operated by the engineer. Therefore, when it appeared from plaintiff's evidence in this case, as it did, that the train in question was composed of the two classes or kinds of cars, some with power brakes in good order and others defective or out of repair in that particular, the carrier must then show a compliance with the statute by proof that the cars with the defectively equipped brakes are not associated with the properly equipped power brake cars but are placed to the rear of all the latter. The unlawfulness of the operation, unless so placed, results from the association in the air line of cars having defective brakes with cars having brakes operated by the engineer. If then the carrier chooses to operate a freight train composed of such classes of cars, it must bring itself within the requirement of the statute by showing that the defectively

equipped cars are properly placed to the rear of the power brake cars operated by the engineer. Assuming that there is no evidence in the case that directly or affirmatively shows the relative place in the train of these two classes of cars prima facie, at least, the operation of the train was unlawful because the carrier did not, as it had the power to do, disclose their proper relative position.

3. It is vigorously argued by defendants' counsel, though the trial court apparently did not place its decision in whole or in part on such ground, that the sole proximate cause of the accident was the negligence of the engineer in operating the brake system and, therefore, plaintiff cannot recover. Where plaintiff's contributory negligence and defendant's violation of any of these mandatory provisions of the Safety Appliance Act are concurring proximate causes of the accident, the former is to be disregarded and should be eliminated. *Spokane & Inland R. R. Co. v. Campbell,* 241 U. S. 497, 36 Sup. Ct. 683, 60 L. Ed. 1125. We have carefully read the evidence in the abstract and find that there is some conflict therein as to the alleged negligence of the engineer in operating the brake system which was furnished him by his employers. The train got beyond control and ran away. The engineer was killed in the resulting wreck. The fireman testified that he saw the engineer make an application of the air brakes after the train quickened its speed in its passage down the 4 per cent grade. There is evidence by trainmen who were in the caboose at the time and were watching the dial there which showed what was being done by the engineer in operating the brake system. The defendants' master mechanic, speaking as an expert, gave testimony tending to show that the engineer made a mistake or was negligent in first going into reverse and then into emergency when the speed of the train increased, when the proper thing to do would be to go first into emergency and then to reverse. There is testimony by other witnesses produced by the defendants that what the engineer did as recorded by the dial in the caboose, and as shown from other facts in evidence testified to by witnesses,

was the usual method in applying and releasing air in such circumstances. It would be useless further to analyze the evidence bearing on the contributory negligence of the engineer because it is entirely clear that the trial court erred in directing a verdict if and in so far as it was based on this issue when the testimony, as to contributory negligence of the engineer, was in conflict. There was evidence tending to disprove as well as to prove his contributory negligence. So that, even if the death of Watkins resulted from two contributing causes, one the negligence of the engineer in operating the brakes, the other the act of the defendants in violating the statute, this did not absolve the carrier. And in such circumstances it was not for the court to pass upon the weight or sufficiency of the testimony. That was a matter which the jury alone was authorized to determine.

As the defendants in their argument say that the decisions of the courts in the coupling cases under the Safety Appliance Act of Congress are not applicable to air brake cases, we should add that the reasoning in the opinions of the courts in the coupling cases are equally applicable to air brake cases. The Safety Appliance Act was not limited to, nor was its sole object to protect, trainmen by relieving them of the necessity of going between cars to make and unmake couplings. That was only one of its purposes. Another object was to relieve brakemen from going on the tops of cars in a freight train to apply the hand brakes. In *C., B. & Q. Ry. Co. v. United States,* 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582, Mr. Justice Harlan in his opinion, observes that the requirements generally of the Safety Appliance Act as amended in 1908, are absolute and imperative. At page 577, after referring to several cases so holding as to the nature of the duty placed upon a carrier by this act relating to drawbars and to couplers, and the penalty prescribed for a violation, he says that this duty is "expressed in terms which embrace every violation of any provision of the preceeding sections" and thus concludes: "Indeed, a survey of the entire statute leaves no room to

doubt that all violations thereof are put in the same category." It would be strange indeed, if Congress intended to impose an absolute duty with respect to drawbars and couplers and not with respect to power brakes, that it did not distinctly say so or use language indicating that the requirement as to power brakes was less imperative than requirements as to drawbars and couplers. Other cases of like import are *St. Louis, Iron Mt. etc., Ry. v. Taylor*, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; *Minn. & St. Louis R. R. Co. v. Gotschall,* 244 U. S. 66, 37 Sup. Ct. 598, 61 L. Ed. 995; *Delk v. St. Louis & S. F. R. R. Co.,* 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590.

There are some other questions that are raised by counsel in argument which are not necessarily involved in the record before us and may not arise upon a new trial. However that may be, since the state courts must follow the decisions of the Supreme Court of the United States in its construction of the Acts, in advance of decisions by that tribunal we should not, unless the facts of the case before us for consideration require it, take upon ourselves the task of ascertaining and declaring their meaning.

The judgment is reversed and the cause remanded for a new trial.