## MONTGOMERY WARD & CO. v. VOIGT.

### No. 4984.

Circuit Court of Appeals, Seventh Circuit.
March 14, 1934.

Eli F. Seebirt and Lenn J. Oare, both of South Bend, Ind. (Silas H. Strawn, John D. Black, and C. B. Fullerton, all of Chicago, Ill., of counsel), for appellant.

Everett Guy Ballard, of Chicago, Ill., and Robert H. Moore, Harry Long, Roswell B. Johnson, and Gilbert Gruenberg, all of Gary, Ind., for appellee.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal is from a judgment for Voigt for damages he sustained by falling down a freight elevator shaft in appellant's large two-story and basement store building at Michigan City, Ind. We state the facts with some detail.

The building, recently built by appellant, is a half block long, with an alley at the rear (east), and was wholly occupied by appellant. It was served by an electrically operated freight elevator, which was set in motion by the pressing of electric buttons.

The elevator shaft is located about five feet west from the outside face of the east wall, and has four openings, three on the west side of the shaft, serving respectively the basement, first and second floors of the

building, and a fourth opening on the east side of the shaft, about three feet above the level of the alley, at what is termed a loading platform for receiving and discharging merchandise brought to or taken from the building by trucks. The first floor is on the level of the alley. At the level of this platform there is an opening in the east wall of the building about six feet wide and about seven feet high, opposite the opening into the shaft at the platform level. The loading platform itself extends from the outside face of the east wall to the elevator shaft.

The elevator and its appliances were of the automatic variety, which had come into very common use. The elevator itself was enclosed and had doors on the east and west sides which could be opened only when the desired floor was reached, and had to be closed before the elevator could again be moved. The several openings into the shaft were protected by wooden gates, each four or five feet high from the floor. To enter the elevator at a given floor the gate was lifted. The mechanism operating these gates was such that normally they could not and would not be lifted until the elevator was at that particular floor, and the elevator could not leave that floor until the gate was lowered to protect the shaft opening. There were provided—presumably for emergency purposes—means whereby one might reach over the gate into the shaft and throw a latch or mechanism which would break the electric connection and release the gate so that one might then raise it even though the elevator was not then there. But in the ordinary use of the elevator there was no occasion to so operate this mechanism, and thus normally the shaft opening would not be left unprotected when the elevator was not at that level.

For about a year and a half prior to the accident Voigt and several other truck owners, under arrangement with appellant, were in the habit of calling at the building several times daily for the purpose of delivering merchandise which had arrived for appellant at freight depots, or for taking away packages ready for delivery elsewhere. These truck men were not paid salaries and did not work full time for appellant, but were paid by appellant an agreed sum for each package brought to or taken from the building. They were general truck men, doing the same sort of work for various other concerns. The trucks were driven into the alley next to the loading platform, where they discharged appellant's packages, or loaded them for delivery as directed by appellant.

Voigt had been calling there, generally four times daily, during the year and a half preceding his injury. His general custom, particularly during the last four months of this service, was to enter the building at the loading platform, and if the elevator did not happen to be there to press the button and await its arrival, whereupon, if there was no operator on the elevator, he would lift the gate and take the arriving merchandise onto the elevator and to the floor where it belonged; or he would go to the second floor or to the shipping room on the first floor to learn whether there were outgoing packages for him to take.

It seems that, notwithstanding the automatic nature of the elevator, an elevator operator had been employed there most of the time, but that for about four months preceding the accident appellant's working force had been reduced, and that much of the time, particularly during the last four weeks, there was no operator for the elevator, and Voigt had been directed by appellant's manager to operate the elevator himself.

The opening in the wall at the loading platform was covered by a heavy steel rolling curtain, which, because of the difficulty of moving it, was rolled up during business hours. In winter this opening was covered by a heavy canvas curtain, which was fastened on the inside of the wall at the upper part of the opening, and dropped down to the platform. Sometimes it would hang down below the platform on the outside, but at other times it would lie on the platform, causing some folds there. The practice was to push this curtain aside and enter through the opening, whereupon the curtain would fall into place, closing the opening. When the opening was closed the platform was dark, there being no artificial light maintained there.

So much of the loading platform as was over the bottom of the opening in the east wall was covered by an iron plate, and between this plate and the elevator shaft the platform consisted of a rough wooden floor which was a half inch above the level of the plate.

At 4:30 p. m. of January 7, 1931, Voigt brought his truck into the alley and, as was his custom, mounted the platform and drew or pushed aside the canvas curtain, evidently intending to push the electric button on the outside of the shaft and bring the elevator to the platform, if it was not already there. In pushing the curtain aside and advancing through the opening, in some manner he evi-

dently became entangled in the folds of the curtain and stumbled over the uneven floor and toward the shaft. Grabbing at the shaft gate, which was not then there, he pitched into the elevator shaft and fell about twenty feet to its concrete bottom, sustaining the injuries for which his suit was brought.

Immediately after the fall it was found that the platform gate was raised and the elevator was at the floor above, thus leaving the shaft opening at the loading platform wholly unprotected. Upon examination the next morning it was found that the latch or mechanism which held the shaft gate against movement when the elevator was at another floor was broken, and a representative of the Otis Elevator Company, which installed the elevator, then repaired it.

Appellee had no knowledge of or experience with the latches and other mechanism which held the gates against movement when the elevator was not at the floor. He had never lifted a gate when the elevator was not at the same floor, had not seen it done, and was not aware that the gate could be lifted and the shaft opening left unguarded when the elevator was not there.

At the close of appellee's evidence each side moved for a directed verdict in its favor, and the court, deciding the issues for appellee, made findings of fact and entered the judgment herein. Appellant offered no evidence.

Appellant contends that it is not liable because the evidence does not show that it caused the gate to be raised, or knew it had been or was likely to be raised, or that it knew of any conditions which might require it to be raised. It also contends that appellee knew the platform was unlighted, and that the canvas curtain would sometimes lie in folds on the platform, and that there was a slight rise between the wooden floor and the iron plate of the platform; and that appellee, with his knowledge of these conditions, assumed the risk of them, and that his own negligence contributed to causing the accident.

These propositions are stated for appellant in various forms. In the voluminous main briefs of the parties over three hundred citations of authorities are made to support and oppose the various propositions.

 In our judgment the facts as stated indicate the existence of every element essential to raise the inference of negligence against appellant, and to repel any conclusion of assumed risk or of contributory negligence on the part of appellee.

The Safety Appliance Act of Indiana makes specific requirement that plant owners provide and maintain sufficient gates to protect openings to elevator shafts. Section 4443, Burns' Ann. St., Ind. 1926. In dealing with the absence or want of repair of appliances required by statute in the interest of safety, the Indiana courts have held that where the premises are in the entire possession and control of a defendant, and an injury is occasioned through absence of or want of repair in such a device, and in the absence of any proof as to the manner in which the device became out of repair or was not serving its protective purpose, an inference will be raised of the negligence of those so in exclusive possession and control of the premises. Davis Coal Co. v. Polland, 158 Ind. 607, 613, 62 N. E. 492, 92 Am. St. Rep. 319; Terre Haute Co. v. Hayes, 195 Ind. 638, 642, 145 N. E. 569; Suelzer v. Carpenter, 183 Ind. 23, 28, 107 N. E. 467; Linn Grove Light & Power Co. v. Fennig, 86 Ind. App. 170, 154 N. E. 877; Benkowski v. Sanders & Egbert Co., 60 Ind. App. 374, 109 N. E. 924. Some other decisions of like import are Delk v. St. Louis R. R. Co., 220 U. S. 580, 31 S. Ct. 617, 55 L. Ed. 590; Minneapolis & St. Louis R. R. Co. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. Ed. 995.

It is quite evident that had this gate been in its proper place Voigt could not have fallen into the shaft. We see in the record no foundation for the contention that Voigt assumed the risk of the unguarded shaft opening, or that his own negligence contributed to his falling through it. As has been stated, he had no knowledge that the gate could be raised when the elevator was not there, and indeed did not undertake to raise it, and knew nothing of the construction or operation or even existence of the appliances which might be manipulated to release it when the elevator was not at that floor. If it might with some show of reason be said that he was sufficiently aware of the condition of the canvas curtain, and of the platform floor, and of the lack of artificial light to charge him with the assumption of the risk thereof, and possibly even with a degree of negligence in failing to regulate his actions accordingly, yet this would not extend to any condition but for which the accident would in all likelihood not have occurred, viz., the absence of all protection to the opening into the elevator shaft.

The case of Terre Haute Co. v. Hayes, supra, shows circumstances quite similar to those here. There was omission of the statutory duty to keep insulated certain electric

wires, and the plaintiff, who was fully aware of the absence of the insulation, in passing the wires slipped upon the floor, and his hand thus coming into proximity to the exposed wire caused the injury.

Under the indicated facts we would not be warranted in disturbing the findings of the District Court, nor the judgment which the court rendered.

Judgment affirmed.