UNITED STATES v. CHESAPEAKE & O. RY. CO.

(Circuit Court of Appeals, Fourth Circuit.   October 8, 1917.)

No. 1530.

RAILROADS ⬡══229—SAFETY APPLIANCE ACT—CONSTRUCTION.

Safety Appliance Act March 2, 1903, c. 976, § 2, 32 Stat. 943 (Comp. St. 1916, § 8614), requires railroads engaged in interstate commerce to have not less than 50 per cent. of the cars in each train equipped with power brakes operated by the engineer, and further provides that "all power-braked cars in such train which are associated together with said 50 per centum shall have their brakes so used and operated." By order of June 6, 1910, the Interstate Commerce Commission, as authorized by the act, increased the number of cars required to be so equipped and operated in each train to 85 per cent. *Held* that, if the required 85 per cent. of the cars in a train were so equipped and operated, it was not a violation of the act to haul other cars in such train, which, although power-braked, had their air brakes cut out, because defective and not in condition for use.

Knapp, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Action by the United States against the Chesapeake & Ohio Railway Company. Judgment for defendant, and the United States brings error.   Affirmed.

Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C. (R. E. Byrd, U. S. Atty., of Richmond, Va., and Roscoe F. Walter, Sp. Asst. U. S. Atty., of Washington, D. C., on the brief), for the United States.

Randolph Harrison, of Lynchburg, Va. (Harrison & Long, of Lynchburg, Va., on the brief), for defendant in error.

Before PRITCHARD and KNAPP, Circuit Judges, and DAYTON, District Judge.

PRITCHARD, Circuit Judge.   This is an action instituted in the District Court of the United States for the Western District of Virginia to recover penalties for alleged violations of the "Safety Appliance Act." The plaintiff alleges 12 causes of action and demands $1,200 aggregate penalties. Eleven of these causes are alike, alleging the violation of section 2 of the federal Safety Appliance Act approved March 2, 1903, demanding judgment for $1,100 aggregate penalties. The eighth cause of action is in a class by itself (involving defective coupler, finally disposed of by the lower court).

Section 2 of the Safety Appliance Act, upon which plaintiff relies, is in the following language:

"Sec. 2. That whenever, as provided in said act, any train is operated with power or train brakes, not less than fifty per centum of the cars in such train shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power-braked cars in such train which are associated together with said fifty per centum shall have their brakes so used and operated; and, to more fully carry into effect the objects of said act, the Interstate Commerce Commission may, from time to time, after full hearing, increase the minimum percentage of cars in any train required to be

operated with power or train brakes which must have their brakes used and operated as aforesaid; and failure to comply with any such requirement of the said Interstate Commerce Commission shall be subject to the like penalty as failure to comply with any requirement of this section."

By an order entered November 15, 1905, the Interstate Commerce Commission increased the minimum percentage of power-braked cars as specified in the above section from 50 to 75 per cent., and on June 6, 1910, the percentage was further increased by the Commission from 75 to 85 per cent., the increase to take effect September 1, 1910. The order requiring the last increase is in the following language:

"That on and after September 1, 1910, on all railroads used in interstate commerce, whenever, as required by the Safety Appliance Act as amended March 2, 1903, any train is operated with power, or train brakes, not less than 85 per cent. of the cars of such train shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power brake cars in every such train which are associated together with the 85 per cent. shall have their brakes so used and operated."

It is insisted by the government:

"That the cars admitted to have possessed the air brake equipment but which equipment was not operated or so connected up as to be operated were power brake cars within the meaning of that term as used in section 2 of the act of 1903, and that the use of such cars in the condition described and in the manner alleged and admitted by the defendant was unlawful and in violation of the order of the Interstate Commerce Commission."

In order to decide the point thus presented we must determine as to whether a railroad company, after having placed in its train 85 per cent. of cars equipped with workable air brakes, is then precluded from using any cars that have been cut out for defects in the remaining 15 per cent. The history of the safety appliance legislation shows that it was the purpose of Congress to secure the highest possible protection for employés and passengers. To accomplish this end railroad companies were required on and after the passage of this act to have at least 50 per cent. of the cars of any train equipped with proper air brakes, and later, as we have stated, this per cent. was increased to 75 by the Interstate Commerce Commission, and now the amount is fixed at 85 per cent., and it may be that at some future date the railroads will be enjoined with the duty of having 100 per cent. of the cars that may be operated in any train equipped with workable air brakes. However, such is not the case at this time, which leaves us to decide as to whether the use of cars with cut out brakes, but capable of being used for the purpose of transmitting air to cars properly equipped with brakes, is in violation of the act. Was it the intention of Congress that where a car had once been equipped with a workable air brake, but which became defective, should never be used again in a train made up of cars properly equipped with the required percentage of air brakes?

It is conceded by counsel for the government that the cars equipped with old-fashioned hand brakes may be used as the 15 per cent. allowed by the requirements of the Interstate Commerce Commission. Inasmuch as 85 per cent. of the train in question was composed of cars equipped with workable air brakes, which is deemed by the Interstate Commerce Commission to be sufficient to insure the safety of em-

ployés and passengers, it became immaterial as to whether the remaining cars were equipped with air brakes or the ordinary hand brakes, and we cannot think of any possible reason why there should be any distinction made between the cars equipped with ordinary hand brakes and those with air brakes that had been cut out. It would be unreasonable, we think, for the government to make any such demand, and we do not believe that a fair interpretation of the statute warrants a ruling to that effect. The statute which requires a railroad to equip its cars with proper air brakes was enacted for the sole purpose of having a sufficient number of cars thus equipped in every train so as to insure safety, and we think this, and this only, is the extent to which Congress intended that the law should be applied.

Among other things, the order of the Interstate Commerce Commission quoted above provides that:

"* * * Whenever, as required by the Safety Appliance Act as amended March 2, 1903, any train is operated with power, or train brakes, not less than 85 per cent. of the cars of such train shall have their brakes used and operated by the engineer of the locomotive drawing such train."

From the foregoing it is manifest that it was not the purpose of Congress to require every car in a train equipped with power or train brakes to be used and operated by air. If such had been the original purpose of Congress, the duty would have been enjoined upon the railroads to keep 100 per cent. of its cars at all times equipped with air brakes that were in first-class condition and capable of being used.

The Interstate Commerce Commission, in pursuance of the authority conferred upon it by Congress, undoubtedly has the right to require railroads to equip 100 per cent. of their cars with air brakes, but up to the present time they have not seen fit to adopt this policy. This is a function that rests solely with the Commission, and so long as the percentage remains as now fixed by it the courts have no authority to change the same.

The act further provides that:

"All power-braked cars in such train, which are associated together in said 50 per cent., shall have their brakes so used and operated."

This provision clearly indicates that it was the purpose of the Congress that the railroad companies might use power brake cars not associated with the 50 per cent. that the railroad was not required to have operated as "power brake cars" in a workable condition.

In the case of United States v. Baltimore & Ohio Railroad Co. (D. C.) 176 Fed. 114, District Judge Orr said:

"* * * It is averred in plaintiff's statement of claim that, while the train had 75 per cent. of its cars used and operated by the engineer, there were associated together in said train with said 75 per cent. four additional train brake cars which did not have their brakes operated by the engineer. This charges a breach of the provisions of section 2 of the act of March 2, 1903, above quoted. It was admitted at the trial that said four cars were defective and out of repair. It did not appear how long their brakes had been unused. The testimony showed that they had their air 'cut out'—that is, cut off in the pipes extending from the main air line of the train to the brakes. The air was not interfered with in passing through said cars to other cars. It seems plain that with brakes cut out for defects they ceased to be power-braked cars and became part of the allowed percentage of hand-braked cars.

The act nowhere imposes a penalty for using an air-braked car with a cut out brake, as it does for using one with a defective coupler, or one without grabirons or handholds. Again, the act does not say all power-braked cars in a train shall have their brakes used and operated. There is a qualification which must mean that only such power-braked cars 'which are associated together with said' 75 per cent. shall have their brakes used. That clearly contemplated that there might be some power-braked cars not associated with the 75 per cent., which need not have their air brakes used and operated. All the cars in the train, except the four cut-out cars, and the caboose, not complained of, were associated together in the air brake operations by the engineer of the locomotive. When the Interstate Commerce Commission shall, in the exercise of its powers, fix a minimum percentage of cars in any train required to be operated with power or train brakes, which must have their brakes used and operated as required by the act, at a minimum much greater than that which now is the standard, there may be some right to recover upon a cause of action in which the allegations and proofs are similar to those in the case at bar."

The Interstate Commerce Commission under authority conferred upon it by Congress has provided that in the making up of a train the railroad company must equip 85 per cent. of its cars with workable air brakes, and where the railroad, as in this instance, has fully complied with this requirement it is immaterial as to whether the remainder of the train is made up of cars equipped with cut out air brakes or the ordinary train brakes. We think it is contrary to common sense and justice to hold otherwise.

Therefore the judgment of the court below is affirmed.

KNAPP, Circuit Judge (dissenting). I cannot concur in holding it lawful to haul a car which has been equipped with power brakes, when such brakes are unused and unusable, because not in good order. Such a construction of the law seems to me unwarranted by its terms and clearly opposed to its spirit and purpose. It is a matter of common knowledge that the power brake requirement has not been extended to all cars, because a considerable number of them, too good and too much needed to be withdrawn from service, cannot be equipped without prohibitive expense. The initial act of 1893 required a "sufficient number" of power-braked cars to enable the engineer to control a train without the use of hand brakes. In 1896 a minimum of 50 per cent. was imposed, and this minimum has been increased by the Commission, under grant of authority, first, in 1906, to 75 per cent., and later, in 1910, to 85 per cent. But nowhere in the language or legislative history of these enactments and orders do I find any indication of an intent to allow the commercial movement of cars provided with power brakes, when such brakes are not used because out of order or for other reasons. Every reasonable inference appears to me to the contrary. The hauling in each train of a certain percentage, reduced gradually from 50 to 15, of cars not so equipped and used has been permitted, not to cover power-braked cars whose brakes are defective and unworkable, but to keep in needed use a class of cars that cannot as a practical matter be provided with the power-brake appliance. In other words, the percentage exemption includes, in my judgment, and was intended to include, only the older type of hand-braked cars which for one cause and another are not convertible

into power-braked cars, but which in the public interest ought not to be taken out of service.

A car equipped with power brakes, whether originally or by alteration, is in the class of power-braked cars to which the statute applies; and I cannot believe that such a car ceases to belong to that class when and because its power brakes are out of order. Surely the defective condition of its power brakes does not make it in any sense a hand-braked car, and why, then, should that condition entitle it to claim exemption? To hold that it does is, as seems to me, to limit unduly and beyond the legislative intent the aim and scope of the safety appliance laws, and particularly the train brake provision in section 2 of the 1903 enactment, which says:

"That whenever, as provided in said act, any train is operated with power or train brakes, not less than fifty [now eighty-five] per centum of the cars in such train shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power-braked cars in such train which are associated together with said fifty [now eighty-five] per centum shall have their brakes so used and operated."

This means, in my judgment, not merely that 85 per cent. at least of the cars in any train must have power brakes "used and operated," but that all power-braked cars in a given train, however many there may be, must be associated together and used by the engineer, and this necessarily implies that all of them must have their power brakes in an operable condition. So the Commission held in its annual report to the Congress in 1908 (page 43), saying:

"As a result of the requirement of the Master Car Builders' Association that all cars offered in interchange shall be equipped with power brakes, practically all cars are now so equipped. It necessarily follows, therefore, that all such brakes must be in operative condition in order that the law may be complied with. The importance of maintaining all brakes in operative condition is thus clearly apparent; that this has not been done may be due to misapprehension by railway officials concerning the actual requirements of the law."

It is familiar doctrine that the construction given to a statute by those charged with the duty of executing it is entitled to great respect, and ought not to be overruled without cogent reasons. Edwards v. Darby, 12 Wheat. 206, 6 L. Ed. 603; United States v. Moore, 95 U. S. 760, 763, 24 L. Ed. 588; Brown v. United States, 113 U. S. 568, 571, 5 Sup. Ct. 648, 28 L. Ed. 1079; Heath v. Wallace, 138 U. S. 582, 11 Sup. Ct. 380, 34 L. Ed. 1063; Delano v. United States, 220 Fed. 635, 136 C. C. A. 243.

The construction put upon this law by the Commission, which I believe to be correct, seems fully supported by two recent decisions of the Sixth Circuit Court of Appeals, Pennsylvania Co. v. United States, 241 Fed. 824, 154 C. C. A. 526 and B. & O. S. W. Ry. Co. v. United States, 242 Fed. 420, —— C. C. A. —— and by numerous cases therein cited. I am of opinion that the commercial hauling of cars equipped with power brakes, when such brakes are out of order and unused, is a violation of the Safety Appliance Acts, and I must therefore vote to reverse the judgment.