# NEW YORK CENTRAL RAILROAD COMPANY *v.* UNITED STATES.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 169.    Argued January 17, 1924.—Decided April 28, 1924.

1. The acts of Congress and orders of the Interstate Commerce Commission respecting power brakes should be liberally construed to relieve trainmen of the labor and danger involved in the use of hand brakes and to promote the safety of trains and of persons and property thereon.    P. 44.

2. Under the amended Safety Appliance Act, which, as supplemented by the Commission's order, requires that 85 per cent. of the cars in any train shall be equipped with power brakes operated by the engineer and that all power-braked cars "associated together with" such minimum shall have their brakes so used and operated,—cars whose power brakes become disabled en route cannot lawfully be hauled to destination past an available repair station, even in a train of which 85 per cent. of the cars still have operable power brakes, if the former are so interspersed and associated with the latter that they-form part of the air line by which the power brakes of the latter are operated. P. 45.

QUESTION certified by the Circuit Court of Appeals under § 239, Judicial Code, upon review of a judgment of the District Court in favor of the United States, in an action to recover penalties from the Railroad Company for violations of the Safety Appliance Act.

Mr. S. H. West for the New York Central Railroad Company.

Mr. Blackburn Esterline, Assistant to the Solicitor General, with whom Mr. Monroe C. List was on the brief, for the United States.

MR. JUSTICE BUTLER delivered the opinion of the Court.

This action was brought in the District Court for the Western District of Pennsylvania to recover penalties prescribed by the Safety Appliance Acts (Act of March 2, 1893, c. 196, 27 Stat. 531, as amended April 1, 1896, c. 87, 29 Stat. 85, and March 2, 1903, c. 976, 32 Stat. 943). Judgment went in favor of the United States. The case was taken by defendant to the Circuit Court of Appeals on writ of error, and that court, under § 239 of the Judicial Code, certified a question of law to this Court. It is this: "May an interstate carrier lawfully operate a car equipped with power brakes past an available repair station to destination when its power brakes, becoming

out of order in transit, have been cut out of the power brake system of the train and when more than eighty-five per centum of the remaining[1] cars of the train are equipped with power brakes controlled by the engineer of the locomotive? "

On November 10, 1920, the train, which is mentioned in the first cause of action set forth in the complaint, was made up on defendant's railroad at Coalburg, Ohio. It consisted of 63 cars, all of which were equipped with air brakes; and it was moved over the defendant's lines via Erie, Pennsylvania, to Buffalo, New York. All the air brakes and air brake appliances were in working order when the train left Coalburg, and were operated by the engineer on the locomotive. Some time after leaving Coalburg, the air brakes on three cars became defective, so that they could not be used. Because of the liability of such brakes to stick and cause delay and damage to the train, the trainmen cut them out from their connection with the line of air hose by turning the cut-out cocks in the cross-over pipes. This made it impossible for the engineer to operate the brakes on these cars, but did not interfere with his use of the brakes on the 60 other cars. He did use and operate them independently of the defective brakes, and thereby controlled the speed of the train without requiring the brakemen to use the hand brakes for that purpose. The three cars with defective brakes were the tenth, fortieth and forty-fourth cars in the train, counting from the head end. At Erie defendant had repair men and materials available for the repair of the defective brakes. The train was run past the repair station to Buffalo in the condition stated above. The train mentioned in the second cause of action had 80 cars, and the facts with respect to it are in substance the same as the foregoing.

---

[1] The question is considered as if the word "remaining" were stricken out.

The pertinent provisions of the acts of Congress are: ". . . It shall be unlawful for any common carrier . . . to use . . . any locomotive . . . not equipped with a power driving-wheel brake and appliances for operating the train-brake system, or to run any train . . . that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose." § 1, c. 196, Act of March 2, 1893, 27 Stat. 531. ". . . Whenever . . . any train is operated with power or train brakes, not less than fifty per centum of the cars in such train shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power-braked cars in such train which are associated together with said fifty per centum shall have their brakes so used and operated; . . ." § 2, c. 976, Act of March 2, 1903, 32 Stat. 943. ". . . All cars must be equipped with . . . efficient hand brakes; . . ." § 2, c. 160, Act of April 14, 1910, 36 Stat. 298. Penalties are prescribed by c. 87, Act of April 1, 1896, 29 Stat. 85, and § 4, c. 160, Act of April 14, 1910, 36 Stat. 298.

Pursuant to authority conferred upon it by the Act of 1903, the Interstate Commerce Commission, November 15, 1905, ordered that the minimum prescribed by the act be increased to 75 per cent; and, on June 6, 1910, ordered it increased to 85 per cent.

Defendant contends that, within the meaning of § 2 of the Act of March 2, 1903, the cars having air brakes which were out of order were not " power-braked cars " while in that condition, and that the law did not require their brakes to be operated by the engineer, as at all times power brakes on more than 85 per cent. of all the cars in the train were so operated.

The acts of Congress and orders of the Commission above referred to should be liberally construed to relieve

trainmen of the labor and danger involved in the use of hand brakes to control the speed of trains and to promote the safety of trains and of persons and property thereon. *Chicago, M. & St. P. Ry. Co.* v. *Voelker,* 129 Fed. 522, 527; *Johnson* v. *Southern Pacific Co.,* 196 U. S. 1, 17. It is the purpose, as soon as practicable, to require all cars to be equipped with power brakes. See *In, re Power or Train Brakes,* 11 I. C. C. 429. At the time in question, the requirements were that all cars be equipped with hand brakes; that at least 85 per cent. of all cars in any train be equipped with power brakes and operated by the engineer, and that all power-braked cars associated together with such minimum have their brakes so used and operated.

Only two classes of cars are contemplated by the act,—those equipped with hand brakes and power brakes, and those equipped with hand brakes only. When the train started from Coalburg, undeniably all were then " power-braked cars." The failure of the brakes to work did not take the cars out of that class.

Hand-braked cars lawfully may be hauled in trains having the prescribed number of cars equipped with power brakes operated by the engineer. The law does not require that the brakes on all power-braked cars in the train shall be so operated. See *Lyon* v. *Railway,* 77 S. Car. 328, 339; *United States* v. *Chesapeake & Ohio Ry. Co.,* 247 Fed. 49, 51; *United States v. Baltimore & Ohio R. R. Co.,* 176 Fed. 114, 119. It does not require the extra switching which would be necessary to associate together all power-braked cars in the train, and some of them may be separated from the prescribed minimum by hand-braked cars. See *In re Power or Train Brakes, supra.* Hand-braked cars have no air line, and it is necessary that they be placed in the train to the rear of the power-braked cars making up the prescribed minimum. The cars having power brakes which became defective and were cut out

formed a part of the air line and were located at intervals in the train. The air line through each of these cars was used to operate brakes on other cars after as well as before the cut-out cocks were turned. Clearly, they were associated together with the other cars equipped with power brakes. The act specifically requires that all power-braked cars so associated shall have their brakes used and operated by the engineer. Defendant's contention would permit the hauling, in association with cars having their power brakes operated by the engineer, of 15 per cent. of the cars in a train with power brakes in bad order and cut out. This would nullify the provision of § 2 of the Act of 1903. It must be held that the running of the train from Erie to Buffalo in the condition above described was a violation of the law. See *Pennsylvania Co.* v. *United States,* 241 Fed. 824, 830; *Virginian Ry. Co.* v. *United States,* 223 Fed. 748; *United States* v. *Great Northern Ry. Co.,* 229 Fed. 927.[2]

The unlawfulness of the operation resulted from the association in the air line of cars having defective brakes with cars having brakes operated by the engineer. The cutting out of the defective brakes, leaving the cars on the air line, did not terminate the association. While on the air line having their brakes cut out, such cars are to be distinguished from hand-braked cars. Because they have no power line, it is impossible, within the meaning of the act, to associate hand-braked cars with cars equipped with power brakes operated by the engineer. And, when not a part of the air line, power-braked cars whose brakes will not work are not so associated. When placed to the rear of the cars having their brakes operated by the engineer, the air line on such cars cannot be used to operate any brakes on the train. Having inoperative brakes and being so located, they are not associated with the prescribed

[2] Cf. *United States* v. *Chesapeake & Ohio Ry. Co.,* 247 Fed. 49; *United States* v. *Baltimore & Ohio R. R. Co.,* 176 Fed. 114.

minimum; and § 2 of the Act of 1903 does not require that they shall have their brakes operated by the engineer.

The question whether it was a violation of law to haul defective cars to Erie, the place of the first repair station, while associated in the train with the prescribed minimum is not involved in this case, and we express no opinion upon it.

The answer to the question certified is:

*No, unless placed in the train to the rear of all cars having their brakes operated by the engineer.*