## UNITED STATES v. CHICAGO, ST. P., M. & O. RY. CO.

District Court, D. Minnesota, Third Division. September 23, 1929.

No. 1904.

Lewis L. Drill, U. S. Atty., and Chester L. Kraft, Asst. U. S. Atty., both of St. Paul, Minn., and M. C. List, Sp. Asst. U. S. Atty., of Washington, D. C., for the United States.

William T. Faricy, of St. Paul, Minn. (R. N. Van Doren and Nelson J. Wilcox, both of Chicago, Ill., on the brief), for defendant.

SANBORN, District Judge. The suit is one for a penalty for an alleged violation of the power or train brake provisions of the Safety Appliance Acts (45 USCA § 1 et seq.) and of the order of the Interstate Commerce Commission issued pursuant to the provisions of section 2 of the Act of March 2, 1903 (32 Stat. 943 [45 USCA § 9]), which order reads as follows:

"That on and after September 1, 1910, on all railroads used in interstate commerce, whenever, as required by the Safety Appliance Act as amended March 2, 1903, any train is operated with power or train brakes, not less than 85 per cent. of the cars of such train shall have their brakes used and operated by the engineer of the locomotive drawing such train, and all power-brake cars in every such train which are associated together with the 85 per cent. shall have their brakes so used and operated."

On October 18, 1928, the defendant, an interstate carrier by railroad, operated over its line from St. Paul passenger train No. 406, consisting of locomotive No. 1639, which was drawing the train, its tender, 11 passenger coaches, and locomotive No. 67, a switch engine which acted as a helper or pusher engine for the distance of two miles out of St. Paul, together with its tender, making in all 15 vehicles or units of equipment. Both of the locomotives, their tenders, and the 11 coaches were equipped with power or train brakes, all capable of being operated and controlled by the engineer on the head engine. The brakes on the head engine, its tender, and the 11 passenger coaches were connected up, so that all of them were operated by such engineer, but the helper engine and its tender were not connected up; such engine being merely coupled to the last coach, the air hose of the last car and of the pusher engine being disconnected.

The amended answer shows that it had been the customary practice of the defendant for some 15 years to use a helper engine in connection with the movement of its trains out of the St. Paul terminal up the heavy grade on the defendant's line to Hudson and points east. This helper engine at all times was coupled to the rear coach, and furnished sufficient power to enable the head engine to negotiate the grade. When a point was reached where the head engine could pull the train without assistance, the helper engine was disconnected while the train was in motion, and proceeded back to the terminal. The amended answer further shows that, if the air brakes of the helper engine and its tender had been connected with the air line of the train, so as to be operable by the head engineer, it would have been dangerous, if not impossible, to disconnect the helper engine while the train was in motion, and that therefore that engine would have been required to remain with the train until it reached a point where the train could have been stopped, the helper engine disconnected, and the train started without its aid, which it

appears would have been some 4 miles beyond the point where the engine was ordinarily uncoupled; that this would have resulted in a delay of from 7 to 10 minutes. It further appears that a similar delay would occur in connection with moving the train up a grade out of Hudson east, where a helper engine is also used. The amended answer shows that there have been no accidents resulting from using a helper engine in the manner set forth, at any time, and that many of the other railroads resort to the same practice in moving heavy trains under similar circumstances, and that there is nothing unusual or dangerous about the practice.

Reduced to its lowest terms, the contention of the government is that, under the order of the Interstate Commerce Commission, all the units of equipment attached to a train which are equipped with power or train brakes in working order must have their brakes connected to the air line, so that they can be operated by the engineer of the locomotive drawing the train.

The defendant's contention is that the order of the Commission does not require that the brakes of a helper engine used as a part of the motive power in the rear of the train, although coupled to it, be operated by the head engine, and that this is particularly true where all of the units of equipment, with the exception of the helper engine at the rear, which constitute more than 85 per cent. of all such units, have power or train brakes so connected as to be operated by the engineer of the head engine.

In order to sustain the government's contention in this case it must be held:

(1) That the helper engine was a car, within the meaning of the law and the order of the Interstate Commerce Commission; and

(2) That it was associated together with 85 per cent. of the cars of the train having power brakes.

As was said by the Supreme Court in New York Central R. R. v. United States, 265 U. S. 41, 44, 44 S. Ct. 436, 437, 68 L. Ed. 892:

"The acts of Congress and orders of the Commission above referred to (Safety Appliance Acts, Act March 2, 1893, c. 196, 27 Stat. 531, as amended April 1, 1896, c. 87, 29 Stat. 85, and Act March 2, 1903, c. 976, 32 Stat. 943 [45 USCA § 1 et seq.]; orders of Commission November 15, 1905, and June 6, 1910) should be liberally construed to relieve trainmen of the labor and danger involved in the use of hand brakes to control the speed of trains, and to promote the safety of trains and of persons and property thereon."

The construction should be reasonable, and should be as broad as the spirit of the acts and of the order of the Commission. However, it is the law that, where plain language is used, there is no room for construction.

It would not be unreasonable to hold that a dead engine, coupled into a train for the purpose of being hauled as a car is hauled, is a car within the spirit of the law and the order of the Commission; but in this case it is conceded that the engine was no part of the load being hauled, but was a part of the motive power of the train. It is a matter of common knowledge that for many years the practice of moving heavy trains, as this one was moved, was common and not considered dangerous, and it would seem that, if it was the intention of Congress or the Interstate Commerce Commission that a helper engine and its tender should be regarded as one car or two cars, plain language would have been used, so as to leave no uncertainty in that regard. My opinion is that the helper engine was not a car.

Assuming, however, that under the order of the Commission the helper engine may be construed to be a car, there is still grave doubt as to whether the defendant violated the order. The words, "and all power-brake cars in every such train which are associated together with the 85 per cent. shall have their brakes so used and operated," are susceptible of two constructions. They may mean that all power-braked cars in the train must be operated by the engineer of the head engine, or they may mean that the brakes of all cars constituting the first 85 per cent. must be so operated. It seems to me that it would not be an unreasonable construction of the law and the order of the Commission to hold that all power-braked cars with operable brakes making up a train, even though in excess of the 85 per cent., are required to be controlled by the engineer, and that it is only in cases where cars not so equipped in excess of 85 per cent. are carried at the rear of the train that the order is not violated.

However, the decision of the Supreme Court in New York Central R. R. v. United States, supra, apparently holds that, under the law and the order of the Commission which are here involved, if the first 85 per cent. of all the cars in the train are power-braked cars operated by the engineer, it is not a violation of the law for those cars behind the 85 per cent., even though equipped with power brakes, to be not so operated.

The court said (page 45 of 265 U. S., 44 S. Ct. 437, 68 L. Ed. 892):

"Only two classes of cars are contemplated by the act—those equipped with hand brakes and power brakes, and those equipped with hand brakes only. When the train started from Coalburg, undeniably all were then 'power-braked cars.' The failure of the brakes to work did, not take the cars out of that class. Hand-braked cars lawfully may be hauled in trains having the prescribed number of cars equipped with power brakes operated by the engineer. The law does not require that the brakes on all power-braked cars in the train shall be so operated."

The decision specifically holds that an interstate carrier may not lawfully operate a car equipped with power brakes past an available repair station to destination, when its power brakes, becoming out of order in transit, have been cut out of the power-brake system of the train, and when more than 85 per cent. of the remaining cars of the train are equipped with power brakes controlled by the engineer of the locomotive, unless placed in the train to the rear of all cars having their brakes operated by the engineer. However, since the court says that the failure of the brakes to work does not take a power-braked car out of its class, and that it is not unlawful to transport such a car at the rear of a train having 85 per cent. of the cars operated by the engineer, it must necessarily follow that to transport a power-braked car with operable brakes at the rear of such a train is not unlawful, although the brakes of such car are not operated by the engineer. It is true, as pointed out by the government, that there is some language in that opinion which would seem to indicate that the Supreme Court did not intend to hold that all power-braked cars whose brakes would work were not required to have them connected up, so that they could be operated by the engineer; but, reading the opinion as a whole, I can come to no other conclusion than as above stated.

Being of the opinion that the helper engine was not a car within the meaning of the law and the order of the Commission herein referred to, and being further of the opinion that more than 85 per cent. of all the "associated" units of equipment were being operated by the engineer of the head engine, I reach the conclusion that the demurrer to the amended answer of the defendant must be overruled.

It is so ordered.