**SCHROBLE v. LEHIGH VALLEY R. CO.**
No. 8.

Circuit Court of Appeals, Second Circuit.
Feb. 6, 1933.

Alexander & Green, of New York City (Clifton P. Williamson and H. S. Ogden, both of New York City, of counsel), for appellant.

John C. Robinson, of New York City (John C. Robinson and Morris A. Wainger, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

The defendant contends that the judgment should be reversed because (a) there was no proof of any violation of the Safety Appliance Acts; (b) there was no proof of negligence; and (c) there were various errors in the exclusion of evidence and in the judge's charge.

The violation of the Safety Appliance Acts which plaintiff relies on is apparently based on sections 1, 3, and 9 of title 45 of the United States Code (45 USCA §§ 1, 3, 9). Section 1 requires that no train shall be run which has not a sufficient number of cars in it so equipped with power brakes that the engineer can control its speed without requiring brakemen to use the common hand brake for that purpose. Section 3 provides that any railroad which shall have equipped a sufficient number of its cars with power brakes may lawfully refuse to receive from

connecting lines any cars not equipped sufficiently with such power brakes as will work readily with the brakes in use on its own cars. Section 9 provides that not less than 50 per cent. of the cars shall have their brakes operated by the engineer of the locomotive drawing the train, and that all power braked cars which are associated together with the 50 per cent. shall have their brakes so operated. It likewise authorizes the Interstate Commerce Commission to increase the minimum percentage of 50 per cent. of the cars required to be operated with power brakes.

In 1910 the Interstate Commerce Commission increased the minimum percentage of cars to be equipped with air brakes operated by the engineer to 85 per cent., and it is held that section 2 of the Safety Appliance Act (45 USCA § 9) is violated, even though the minimum percentage requirement is met, if all power braked cars in the train other than those coupled at the end of the train are not under the brake control of the engineer. New York Cent. R. R. v. United States, 265 U. S. 41, 44 S. Ct. 436, 68 L. Ed. 892.

■ Because sparks were seen flying underneath the truck of one of the cars prior to the derailment, it is argued that the power brake was out of order. Such an inference, if permissible at all, must be based largely on the condition in which the brake equipment was found after the truck of the car to which it belonged had been forced from its position and the car itself had broken away from the rest of the train. But there is no evidence that the power brakes did not work prior to the derailment or that any part of the equipment which is supposed to have hung down interfered with the due application of the brakes and thus violated the Safety Appliance Act. We therefore think that it was error for the trial court to refuse to charge that the jury was not warranted in finding that the accident was caused by the violation of any of the statutes or laws relating to brakes or other safety appliances.

■■ There was enough evidence to go to the jury that the dragging of some part of the brake equipment caused the derailing of the cars. It is true that no one saw any equipment dragging, but the flying sparks underneath the truck, the marks on the ties and in the snow for a considerable distance back of Switch No. 4, and the condition in which the brake equipment was found after the accident were bits of evidence which, taken together, were enough to enable a jury to infer that the derailment occurred because something hanging down from the truck interfered with

the wheels as they passed over the switch and caused them to leave the rails. These circumstances did not indicate that the defendant had failed to comply with the statute requiring power brakes sufficient for the control of the train, but did tend to show that the railroad had neglected proper care in the maintenance of an equipment which, if in good order, would not hang down and derail the cars. To prove that it had exercised due care, the defendant offered to show by several witnesses that the car Michigan Central No. 82355 had been inspected twice within less than two days prior to the accident, and that its brake equipment was found in good order. This evidence was objected to by the plaintiff on the ground that inspection would afford no excuse for failing to maintain in proper condition the brake equipment required by the Safety Appliance Act. Defendant's counsel argued that the evidence was competent to show that, when the railroad had the car inspected and no discoverable defects were found, it had done its duty, but the objection was sustained and the proferred testimony excluded. The judge allowed the jury to render a verdict for the plaintiff if they found a violation of the Safety Appliance Act or found negligence in maintaining the equipment in proper condition which occasioned the accident. Testimony that the Michigan Central car had recently been inspected was relevant to rebut the imputation of negligence. It is true that the record does not show that the car underneath which the sparks were seen to fly and from which some of the brake equipment is said to have been hanging was the Michigan Central car, but the bill of particulars stated that such was plaintiff's claim, and the defendant had a right to prove the Michigan Central car in particular as well as the other two cars had had recent inspections and that it was found to be without flaw or blemish. In spite of the fact that the plaintiff abandoned her original claim that a failure to inspect was one of the acts of negligence contributing to the accident, the defendant might properly prove inspection to rebut the general inference of negligence, and the exclusion of evidence offered for that purpose was error. Whether the plaintiff sought to have the jury find negligence from the testimony about the flying sparks and the marks on the ties and in the snow, or from the testimony about the speed of the train or to infer it merely from the derailment, one of the most obvious ways of meeting the imputation was to show that the braking equipment had recently been inspected and was found in good order. Even if

there had been evidence that the power brakes were defective and did not hold, proof that, on recent inspection, they were found in good condition, would have been competent to rebut that evidence. There was no evidence that they would not hold or that the Safety Appliance Act was violated, but there was prima facie proof of negligence.

The defendant criticizes the charge because the judge instructed the jury that there was a "presumption of negligence" arising from the happening of the accident which the "defendant should meet." The judge said: "There are cases where the circumstances connected with the accident are of such an unusual character as to justify the inference that it was due to the negligence of the one having possession and control of the thing, in this case the railroad train, causing the accident, unless it is shown to the satisfaction of the jury that such negligence did not exist." He then proceeded to refer to certain testimony for the defendant that the cars had been inspected prior to the accident and were in good condition, and added: "It is for you to consider whether that testimony explains away the presumption of negligence that I have just outlined to you."

As the charge then stood, the jury might have thought that the defendant was obliged to explain how the accident happened and to overcome by evidence any inference of negligence that arose from the derailment. There was, however, properly speaking, no "presumption" which the defendant had to overcome, but an inference of negligence. Because of that inference, it was the duty of the defendant to go forward with proof that the railroad had exercised due care to see that its tracks, rails, cars, and equipment were in good order. Erie R. Co. v. Murphy (C. C. A.) 9 F.(2d) 525; Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905; Southern Ry. v. Bennett, 233 U. S. 80, 34 S. Ct. 566, 58 L. Ed. 860. But the burden of establishing by a preponderance of evidence that the defendant was negligent was always upon the plaintiff, and, if the inference of negligence arising from the unusual occurrence and defendant's proof of inspection and due care finally left the jury in doubt whether the derailment was caused by the negligence of the railroad or not, the defendant was entitled to a verdict. Consequently the instruction that the defendant was bound to "explain away the presumption of negligence" was not correct. Nor was it fairly cured by the instruction that "the burden is on the plaintiff to prove negligence," for the instruction about

the burden of proof was confused by the prior statement that it was the duty of the defendant to "explain away the presumption of negligence." The defendant was not obliged to explain the cause of the derailment, but only to go forward with proof that it had exercised due care to furnish a safe equipment.

Finally there was error in refusing to strike out the oral testimony that there was a regulation of the railroad prohibiting the running of trains in the freight yard at a speed of more than fifteen miles an hour. The testimony that P. M. 1 ran at a higher rate of speed was slight and strongly controverted. It was prejudicial to allow the oral proof to stand when it was shown that the regulation was embodied in printed instructions in a schedule or time-table. The writing was the best evidence, and precluded the oral proof, unless a foundation could be laid for secondary evidence. The oral testimony accordingly should have been expunged.

For the foregoing reasons, the judgment is reversed.