## UNITED STATES v. NORTHERN PAC. RY. CO.

### No. 7469.

Circuit Court of Appeals, Ninth Circuit.
May 6, 1935.

James H. Baldwin, U. S. Atty., and R. Lewis Brown, both of Butte, Mont., and M. C. List, Sp. Asst. to U. S. Atty., of Washington, D. C., for the United States.

Gunn, Rasch, Hall & Gunn, of Helena, Mont., and Howard Toole, of Missoula, Mont.; for appellee.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

WILBUR, Circuit Judge.

After a trial by the court without a jury, the District Court gave judgment dismissing appellant's complaint, from which judgment this appeal is taken. Appellant is seeking to recover a statutory penalty of $100 for an alleged violation of the Safety Appliance Act as modified by an order of the Interstate Commerce Commission of June 6, 1910, made pursuant to the provisions of that act.

The facts are set forth in an agreed statement which we will briefly summarize. On August 3 and 4, 1933, appellee operated a freight train consisting of 74 cars and a locomotive from Spokane, Wash., through Paradise, Mont., to Missoula, Mont. All of the 74 cars were equipped with power or train brakes, and all were in use and operated by the engineer when the train left Spokane. At some point between Spokane and Paradise, the brakes on car No. 93305, the eighth car from the locomotive, ceased to operate properly, and, because of the possibility that the movement of the train might be thereby interfered with, the cutout on the cross-over pipe of said car was closed so as to release the air brakes on that car. This made it impossible for the engineer to operate the brakes on that car, but it did not interfere with the proper operation and control by the engineer of any of the other power-braked cars in the train.

Appellee maintained a repair station for cars at Spokane and at Missoula, but none between these points. There was a train-yard at Paradise, with switches and side tracks, but no facilities or men to repair power brakes. On the entire journey of the train from Spokane through Paradise to Missoula, all cars, including the eighth car from the locomotive, were "associated together," that is, had their train air lines connected. The car in question was taken out of the train at Missoula, where repairs were made to the air brake apparatus thereon.

Under section 2 of the Act of March 2, 1903, amending the Safety Appliance Act (32 Stat. 943, 45 USCA § 9), as modified by the order of the Interstate Commerce Commission of June 6, 1910, a carrier is bound to have a minimum of 85 per cent. of the cars in a train equipped with power or train brakes used and operated by the engineer and all power-braked cars which are associated together with the said 85 per cent. must also have their brakes so used and operated. The appellant contends that since the brakes on this eighth car could not be so used and operated, the eighth car should have been dissociated or switched to the end of the train before proceeding beyond Paradise, the first switching point reached after the defect was discovered and the cut-off cock closed.

Section 4 of the Act of April 14, 1910 (36 Stat. 299, 45 USCA § 13) which also amended the Safety Appliance Act, provides that: "Any common carrier subject to this Act [chapter] using, hauling, or permitting to be used or hauled on its line, any car subject to the requirements of this Act [chapter] not equipped as provided in this Act [chapter], shall be liable to a penalty of $100 for each and every such violation, to be recovered as provided in section 6 of this [chapter] (Act of March second, eighteen hundred and ninety-three, as amended April first, eighteen hundred and ninety-six): Provided, That where any car shall have been properly equipped, as provided in this Act [chapter], (and other Acts mentioned herein), and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by section four of this Act [this section] or section 6 of this [chapter] (Act of March second, eighteen hundred and ninety-three as amended by the Act of April first, eighteen hundred and ninety-six), if such movement is necessary to make such repairs and such repairs can not be made except at such repair point. * * *"

Appellee concedes that the provisions of the Safety Appliance Act as amended are mandatory, but contends that it was within the exception contained in the foregoing proviso of section 4 (45 USCA § 13) when it hauled car No. 93305 from the point where the defect was first discovered to Missoula, the nearest available repair point, and that it was not necessary that the car be switched to the rear of the train at Paradise to avoid liability for the statutory penalty.

To support its contention that the disabled car should have been switched to the rear of the train, appellant relies upon the case of New York Central R. Co. v. U. S., 265 U. S. 41, 44 S. Ct. 436, 438, 68 L. Ed. 892. In that case the Supreme Court held that it was a violation of section 2 of the Act of March 2, 1903, 45 USCA § 9, as supplemented by the Commission's order of June 6, 1910, to haul cars whose power brakes became disabled en route beyond the first available repair point, unless such cars were carried at the rear of the train so as not to be associated with the prescribed minimum of 85 per cent. of the cars in the train having power brakes used and operated by the engineer. However, in that case the court stated: "The question whether it was a violation of law to haul defective cars to Erie, the place of the first repair station, while associated in the train with the prescribed minimum, is not involved in this case, and we express no opinion upon it."

It is thus seen that the precise question here involved was expressly reserved by the Supreme Court. No case has been cited by counsel and we have found none which deals with the hauling of a car with defective brakes from the place the defect was first discovered to the nearest available repair point while associated with the 85 per cent. of the cars in the train having power brakes used and operated by the engineer.

Section 2 of the Act of 1903 (32 Stat. 943, 45 USCA § 9, supra) does not provide the penalty for its violation, but section 3 of that act (45 USCA § 10) provides that: "* * * All of such provisions, powers, duties, requirements, and liabilities (of said Act of March second, eighteen hundred and ninety-three, as amended by the Act of April first, eighteen hundred and ninety-six,) shall, except as specifically amended by this Act [sections 8 and 9], apply to this Act."

This reference makes applicable section 6 of the Act of March 2, 1893, as amended by the Act of April 1, 1896 (29 Stat 85, 45 USCA § 6), which provides the penalty for a violation of the act, and is as follows: "Sec. 6. That any [such] common carrier * * * using any locomotive engine, running any train, or hauling or permitting to be hauled or used on its line any car in violation of any of the preceding provisions of this Act [chapter], shall be liable to a penalty of $100 for each and every such violation. * * *"

The provision, section 4 of the amendment of 1910, above quoted (45 USCA § 13), permits the hauling of cars with defective or insecure equipment, which became defective or insecure en route, to the nearest repair point, "without liability for the penalties imposed by (section four of this Act or section six of the Act of March second, eighteen hundred and ninety-three as amended by the Act of April first, eighteen hundred and ninety-six) [this section or section 6 of this chapter], if such movement is necessary to make such repairs and such repairs can not be made except at such repair point."

Sections 4 and 6, supra, are the only provisions of the act imposing penalties for the violation of any provision of the act, and the proviso of section 4 expressly makes these penalties inapplicable, where a defective car is being hauled to the nearest repair shop.

This proviso in section 4 of the amendment of 1910, supra, does not limit such haulage to the defective car as a unit as distinguished from being associated in a train. This was decided in Erie R. Co. v. U. S., 240 F. 28, 35, where Circuit Judge Denison, speaking for the Circuit Court of Appeals for the Sixth Circuit stated: "It is said that, because the permission of the proviso of section 4 extends only to 'any car,' it should not be thought of as reaching a train or an association of cars, or, in other words, that general permission to haul a car does not extend to hauling it in a train or in any way except alone. This construction is fatal to the whole purpose of the act, because the original prohibition of section 2 and the penalties of section 4 are not directed against hauling trains having defective cars, but are against hauling 'any car.' Consequently, if a car alone and a car in a train are essentially different things, and if the language 'any car' reaches the former and not the latter, sections 2 and 4, the main sections of the act, do not reach trains including defective cars, but only such

a car as a separate unit; and, of course, this construction is not right."

In support of this construction it should be observed that the amendment also contains a further proviso that "nothing in this proviso shall be construed to permit the hauling of defective cars by means of chains instead of drawbars, in revenue trains or in association with other cars that are commercially used, unless such defective cars contain livestock or 'perishable' freight." This proviso tends to show that it was the intention of Congress to permit the hauling to the nearest repair point of cars defective in other respects while in revenue trains or in association with other cars. Appellant concedes the right to haul the car with defective brakes in a train, in accordance with the decision of the Circuit Court of Appeals in Erie R. Co. v. U. S., supra, but contends that the car should nevertheless be switched to the rear at the earliest opportunity because it was not intended by the amendment of 1910 to "let down the bars with respect to the power or train brake provisions of the Acts."

Hauling car No. 93305 associated together with the 85 per cent. with power brakes operated by the engineer while the power brakes on such car were defective so that they could not be operated by the engineer was a violation of section 2 of the Act of 1903 (45 USCA § 9, supra). However, the penalty for such violation provided in section 6 was not thereby incurred because hauling such car to the nearest available repair point was necessary for the purpose of making the repairs and the proviso contained in section 4 of the act of 1910 (45 USCA § 13, supra) expressly relieves appellee from liability for the penalty provided in section 6 for such violation, and, consequently, this action to recover such penalty must fail.

Appellant also assigns as error the admission of the testimony of one of appellee's witnesses with respect to the relative safety of placing cars with power brakes cut out in different parts of the train. The case was tried by the court, a jury trial having been waived, and error cannot be predicated upon the introduction of evidence under these circumstances, unless it is shown that the evidence alleged to have been erroneously admitted affected the result. Gardner v. U. S. (C. C. A.) 71 F.(2d) 63, and cases there cited. At the time the evidence complained of was admitted, the trial court stated: "If it is incompetent, the court will disregard it." Since there is no showing that this evidence affected the result, we need not consider it further.

Judgment affirmed.