## UNITED STATES v. PANHANDLE & S. F. RY. CO.

No. 829.

District Court, N. D. Texas, Amarillo Division.

July 14, 1937.

920

one train, to wit: Its own No. 41, consisting of forty-one cars, drawn by its own locomotive engine No. 1057, all of said cars being equipped with power or train brakes, not less than 85 per cent thereof, to wit: forty cars, having their brakes used and operated by the engineer of said locomotive.

"Plaintiff further alleges that on said date defendant operated said train as aforesaid over its line of railroad from Pampa, in the State of Texas, within the jurisdiction of this court, when one of the power-braked cars associated together with said 85 per cent, to wit: A T & S F No. 117079, the thirty-eighth car, did not have its power or train brakes used and operated by the engineer of said locomotive, the cut-out cock in the cross-over pipe being closed."

The cause was submitted to the court upon an agreed statement. The facts appearing from this statement are: "The defendant admits the facts to be that on November 12, 1932, it operated its interstate train No. 41 drawn by its locomotive engine No. 1057, said train consisting of 41 cars, from Pampa across the Texas-Oklahoma State line toward Clinton, Oklahoma, and that in said train was car A T & S F No. 117079 which did not have its power or train brakes used and operated by the engineer of said locomotive, and that the cut-out cock in the cross-over pipe on said car was closed, as alleged in the complaint. It is agreed between the parties that said car was the 38th car back from the locomotive engine, and that none of the cars in said train between said car No. 117079 and the engine had defective power or train brakes. Said train was made up and originated at Pampa, Texas, and when it left Pampa all the cars in said train were equipped with power or train brakes, and with exception of A T & S F car 117079 were used and operated by the engineer from Pampa to Clinton, Oklahoma. It is further agreed that the power or train brakes on A T & S F car 117079 being cut out did not prevent the air from passing through all the cars so that the power or train brakes could be used and operated by the engineer save and except those on car A T & S F 117079."

Clyde O. Eastus, U. S. Atty., and Frank B. Potter, Asst. U. S. Atty., both of Fort Worth, Tex., and M. C. List, Atty. for the Interstate Commerce Commission, Bureau of Safety, of Washington, D. C., for the United States.

Adkins, Pipkin, Madden & Keffer, of Amarillo, Tex., for defendant.

JAMES C. WILSON, District Judge.

In this action to recover penalties under the Safety Appliance Act, the defendant has pleaded guilty to the first count in the plaintiff's petition. In the second count of the plaintiff's petition the allegations are:

"Defendant, on November 12, 1932, operated on its line of railroad, over a part of a highway of interstate commerce,

Section 9 of title 45, United States Code, 45 U.S.C.A. § 9, which the defendant is charged with violating, reads: *"Number of cars to be operated with power or train brakes; increase of number.* Whenever, as provided in this chapter, any train is

operated with power or train brakes not less than 50 per centum of the cars in such train shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power-braked cars in such train which are associated together with said 50 per centum shall have their brakes so used and operated; and, to more fully carry into effect the objects of said chapter, the Interstate Commerce Commission may, from time to time, after full hearing, increase the minimum percentage of cars in any train required to be operated with power or train brakes which must have their brakes used and operated as aforesaid; and failure to comply with any such requirement of the said Interstate Commerce Commission shall be subject to the like penalty as failure to comply with any requirement of this section." The prescribed minimum was increased by the Interstate Commerce Commission on June 6, 1910, to 85 per cent.

It is the government's contention that all the cars on this train should have had their brakes used and operated by the engineer, inasmuch as they were all equipped with power brakes, unless the defendant placed the car having the defective brakes at the rear of the train. It is the defendant's contention that inasmuch as at least 85 per cent. of the cars on the train were power braked and operated by the engineer of the locomotive, and were between the locomotive and the thirty-eighth car, that it was not guilty of violating the act in having the power brakes on the thirty-eighth car cut out and not operated by the engineer.

■ It seems to me that the provisions of the act are clear and that it requires at least 85 per cent. of the cars on a train to be power braked with the brakes operated by the engineer and requires all other power-braked cars, in addition to this 85 per cent., which are "associated together with" the 85 per cent., to have their brakes so used and operated.

■ This is the construction placed upon the act by the Supreme Court in the case of New York Central Railroad Company v. United States, 265 U.S. 41, 44 S.Ct. 436, 437, 68 L.Ed. 892, where the court said: "At the time in question, the requirements were that all cars be equipped with hand brakes, that at least 85 per cent. of all cars in any train be equipped with power brakes and operated by the engineer, and that all power-braked cars associated to-

gether with such minimum have their brakes so used and operated." And "clearly they were associated together with the other cars equipped with power brakes. The act specifically requires that all power-braked cars so associated shall have their brakes used and operated by the engineer."

It seems to me that the controlling questions in this case are whether the car with the cut-out brakes was a power-braked car after the brakes were cut out, and whether, after the brakes were cut out, it was "associated together with" the 85 per cent. of power-braked cars whose brakes were operated by the engineer.

The cases cited by the defendant, United States v. Chesapeake & O. Railway Company, 4 Cir., 247 F. 49, and United States v. Baltimore & O. Railway Company, D.C., 176 F. 114, hold that a car equipped with power brakes is not a power-braked car after the power brakes are cut out, but I think that the Supreme Court specifically passed upon this question in the case of New York Central Railway Company v. United States, supra, in the following words:

"Defendant contends that, within the meaning of section 2 of the Act of March 2, 1903 [45 U.S.C.A. § 9], the cars having air brakes which were out of order were not 'power-braked cars' while in that condition, and that the law did not require their brakes to be operated by the engineer, as at all times power brakes on more than 85 per cent. of all the cars in the train were so operated.

"The acts of Congress and orders of the Commission above referred to should be liberally construed, to relieve trainmen of the labor and danger involved in the use of hand brakes to control the speed of trains, and to promote the safety of trains and of persons and property thereon. Chicago, M. & St. P. R. Co. v. Voelker, 129 F. 522, 527, 65 C.C.A. 226, 70 L.R.A. 264; Johnson v. Southern P. Co., 196 U.S. 1, 17, 25 S.Ct. 158, 49 L.Ed. 363, 369, [17 Am. Neg.Rep. 412]. It is the purpose, as soon as practicable, to require all cars to be equipped with power brakes. See In re Power or Train Brakes, 11 I.C.C. 429. * * *

"Only two classes of cars are contemplated by the act—those equipped with hand brakes and power brakes, and those equipped with hand brakes only. When the train started from Coalburg, undeniably all were

then 'power-braked cars.' The failure of the brakes to work did not take the cars out of that class."

In this case the Supreme Court placed a definite meaning upon the phrase "associated together with," so that the phrase means connected on the air line of the train. The words used by the Supreme Court are: "The cars having power brakes which became defective and were cut out formed a part of the air line and were located at intervals in the train. The air line through each of these cars was used to operate brakes on other cars after as well as before the cut-out cocks were turned. Clearly they were associated together with the other cars equipped with power brakes."

And further: "The unlawfulness of the operation resulted from the association in the air line of cars having defective brakes with cars having brakes operated by the engineer. The cutting out of the defective brakes, leaving the cars on the air line, did not terminate the association. While on the air line having their brakes cut out, such cars are to be distinguished from hand-braked cars. Because they have no power line, it is impossible, within the meaning of the act, to associate hand-braked cars with cars equipped with power brakes operated by the engineer. And, when not a part of the air line, power-braked cars whose brakes will not work are not so associated. When placed to the rear of the cars having their brakes operated by the engineer, the air line on such cars cannot be used to operate any brakes on the train. Having inoperative brakes and being so located, they are not associated with the prescribed minimum; and section 2 of the act of 1903 does not require that they shall have their brakes operated by the engineer."

In United States v. Northern Pacific Railway Company, 9 Cir., 1935, 77 F.2d 587, 590, the court said: "(1) Hauling car No. 93305 associated together with the 85 per cent. with power brakes operated by the engineer while the power brakes on such car were defective so that they could not be operated by the engineer was a violation of section 2 of the act of 1903 (45 U.S.C.A. § 9, supra). However, the penalty for such violation provided in section 6 [45 U.S.C.A. § 6] was not thereby incurred because hauling such car to the nearest available repair point was necessary for the purpose of making the repairs and the proviso contained in section 4 of the act of 1910 (45 U.S.C.A. § 13, supra) expressly relieves appellee from liability for the penalty provided in section 6 for such violation, and, consequently, this action to recover such penalty must fail."

The burden is upon the defendant to plead and prove facts bringing it under the exceptions set forth in section 13, title 45, U.S.Code, 45 U.S.C.A. § 13, United States v. Trinity & B. V. Railway Co., 5 Cir., 211 F. 448, and St. Louis Southwestern Railway Co. of Texas v. United States, 5 Cir., 29 F.2d 568.

■ Since the car which had its brakes cut out was a power-braked car associated together with the 85 per cent. of cars power-braked and operated by the engineer, and since the defendant has not pleaded or proved any facts bringing it under the exceptions set forth in section 13, title 45, U.S.Code, 45 U.S.C.A. § 13, judgment will be rendered for the plaintiff.

■ When this matter was originally submitted, at the conclusion of the argument on the facts and the law, I rendered an oral opinion, in which I held the defendant not guilty under second count, but, on reflecting, as we often do, after deciding a case, I grew so doubtful about the correctness of my conclusion that I suggested to the attorneys for the plaintiff that this motion for rehearing be filed. In my hurried disposition of the matter, frankly, I did not grasp the full import of the holding of the Supreme Court in the New York Central Case, viz., that the word "associated" as used in the order means connected on the air brake line; that, if thus on the air line, the car is associated; on the other hand, the car, if placed at the rear, and cut out of the air line, is not associated. It is still difficult for me to see how this thirty-eighth car in this train of forty-one cars, of necessity, must be construed, under the order, to the rear of the train to make its haul lawful; but such is clearly the effect of the holding in that case. The judgment heretofore entered will be set aside and the defendant found guilty and fined $100. A judgment may be drawn accordingly.